EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Luis Morales Rivera; Ariel Berríos Negrón; Leticia Álvarez Valencia t/c/c Leticia Berríos; Scott Popp, Carlos Pagán; Miguel Pereira-Ruiz; Claude Nogard, Maxine Nogard Cameron<br><br>Recurridos<br><br>v.<br><br>Asociación de Propietarios de la Urbanización Dorado del Mar Hotel & Country Club, Inc.; Mildred Noemí García; Eduardo Loayza<br><br>Recurridos<br><br>José Carreras Acevedo<br><br>Peticionario<br><br>_____<br><br>Luis Morales Rivera; Ariel Berríos Negrón; Leticia Álvarez Valencia t/c/c Leticia Berríos; Scott Popp, Carlos Pagán; Miguel Pereira-Ruiz; Claude Nogard; Maxine Nogard Cameron<br><br>Peticionarios<br><br>v.<br><br>Asociación de Propietarios de la Urbanización Dorado del Mar Hotel & Country Club, Inc.; Mildred Noemí García; Eduardo Loayza<br><br>Recurridos | Certiorari<br><br>2024 TSPR 61<br><br>213 DPR ___ |

Número del Caso:  CC-2023-0364 cons. con CC-2023-0365

Fecha:  14 de junio de 2024

Tribunal de Apelaciones:

    Panel IX

**CC-2023-0364**

Representante legal de la parte peticionaria:

    Lcdo. Pedro J. Rivera Rivera

Representante legal de la parte recurrida:

    Lcdo. Rafael G. Rivera Rosario

**CC-2023-0365**

Representante legal de la parte peticionaria:

    Lcdo. Iván Díaz López


Representantes legales de la parte recurrida:

    Lcdo. José De La Cruz Skerrett
    Lcdo. Rafael G. Rivera Rosario


Materia: Sentencia con Opinión de conformidad y Opinión disidente.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Luis Morales Rivera; Ariel Berríos Negrón; Leticia Álvarez Valencia t/c/c Leticia Berríos; Scott Popp, Carlos Pagán; Miguel Pereira-Ruiz; Claude Nogard, Maxine Nogard Cameron

Recurridos

v.

Asociación de Propietarios de la Urbanización Dorado del Mar Hotel & Country Club, Inc.; Mildred Noemí García; Eduardo Loayza

Recurridos

José Carreras Acevedo

Peticionario

_____

Luis Morales Rivera; Ariel Berríos Negrón; Leticia Álvarez Valencia t/c/c Leticia Berríos; Scott Popp, Carlos Pagán; Miguel Pereira-Ruiz; Claude Nogard; Maxine Nogard Cameron

Peticionarios

v.

Asociación de Propietarios de la Urbanización Dorado del Mar Hotel & Country Club, Inc.; Mildred Noemí García; Eduardo Loayza

Recurridos

CC-2023-0364
CC-2023-0365

SENTENCIA

En San Juan, Puerto Rico, a 14 de junio de 2024.

Expedido el auto de *certiorari* y evaluados los alegatos de las partes, se revoca la sentencia del Tribunal de Apelaciones que confirmó la desestimación de la reclamación de epígrafe. En consecuencia, se devuelve el caso al Tribunal de Primera Instancia para que continúe con los procedimientos.

Lo acordó y manda el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Martínez Torres emitió una Opinión de conformidad a la que se unieron los Jueces Asociados señor Kolthoff Caraballo y señor Feliberti Cintrón. El Juez Asociado señor Rivera García emitió la expresión de conformidad siguiente, a la que se unió la Jueza Asociada señora Pabón Charneco:

Me encuentro conteste con el resultado que procede de la Sentencia que hoy se emite. Ciertamente, la controversia medular de este pleito constituye una interrogante jurídica que actualmente no encuentra una contestación definitiva en nuestro ordenamiento. Siendo así, no resultaba correcto que los foros inferiores razonaran que estábamos ante una acción carente de fundamentos en derecho y susceptible de ser desestimada en esta etapa de los procedimientos.

Lo procedente, es que el foro primario prosiga con el trámite de este caso y en esa gestión **preste cuidadosa atención a la totalidad de los argumentos** que indudablemente influyen en esta causa. Atendidos y ponderados los respectivos planteamientos, las partes que resulten inconformes, de así desearlo, podrán recurrir de la determinación que tome el Tribunal de Primera Instancia. En su día, este Foro podrá adentrarse en la controversia y proveerle a las partes y a la ciudadanía una norma clara y vinculante a seguir.

En vista a que esa norma hoy día no existe, recae inicialmente en el foro primario la tarea de resolver, conforme a su criterio, la solución más justa a este caso.

El Juez Asociado señor Estrella Martínez concurre y emitió la expresión siguiente:

El Juez Asociado señor Estrella Martínez concurre y se reitera en los fundamentos contenidos en su Opinión Disidente en *Consejo de Titulares v. Chamah Martínez,* 202 DPR 173 (2019), en lo atinente a los méritos de esta controversia.

El Juez Asociado señor Colón Pérez emitió Opinión disidente.


                    Javier O. Sepúlveda Rodríguez
                    Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Luis Morales Rivera; Ariel Berríos Negrón; Leticia Álvarez Valencia t/c/c Leticia Berríos; Scott Popp, Carlos Pagán; Miguel Pereira-Ruiz; Claude Nogard, Maxine Nogard Cameron

Recurridos

v.

Asociación de Propietarios de la Urbanización Dorado del Mar Hotel & Country Club, Inc.; Mildred Noemí García; Eduardo Loayza

Recurridos

José Carreras Acevedo

Peticionario

CC-2023-0364
CC-2023-0365

_____

Luis Morales Rivera; Ariel Berríos Negrón; Leticia Álvarez Valencia t/c/c Leticia Berríos; Scott Popp, Carlos Pagán; Miguel Pereira-Ruiz; Claude Nogard; Maxine Nogard Cameron

Peticionarios

v.

Asociación de Propietarios de la Urbanización Dorado del Mar Hotel & Country Club, Inc.; Mildred Noemí García; Eduardo Loayza

Recurridos

Opinión de conformidad emitida por el Juez Asociado señor MARTÍNEZ TORRES a la que se unieron los Jueces Asociados señor KOLTHOFF CARABALLO y señor FELIBERTI CINTRÓN.

En San Juan, Puerto Rico, a 14 de junio de 2024.

Estoy conforme con la Sentencia que hoy se certifica. Considero que el Tribunal de Primera Instancia se equivocó al desestimar —al amparo de la Regla 10.2(5) de Procedimiento Civil, infra— el recurso de *injunction* preliminar y permanente presentado por los propietarios de la Urbanización Dorado del Mar. En este, los propietarios solicitaron que se dejara sin efecto la prohibición impuesta por la Asociación de Propietarios de alquilar sus propiedades a corto plazo. El Tribunal de Primera Instancia consideró que, debido a que los arrendamientos a corto plazo variaban el uso residencial al que estaban destinadas las viviendas, los propietarios no tenían un remedio en derecho para impedir el proceder de la Asociación.

Debido a que en Puerto Rico no se ha resuelto categóricamente que los arrendamientos a corto plazo alteran el carácter residencial de las propiedades y en otras jurisdicciones se ha resuelto que no lo hacen, considero que los propietarios peticionarios sí podían tener un remedio en derecho para vindicar sus reclamos. Por esa razón, el foro primario actuó incorrectamente al desestimar el recurso.

I

El tracto procesal de este caso se remonta al 3 de septiembre de 2021. Ese día, algunos propietarios de las villas ubicadas dentro de la Urbanización Dorado del Mar

(propietarios) presentaron ante el Tribunal de Primera Instancia, Sala de Bayamón, una demanda en la que solicitaron sentencia declaratoria, *injunction* preliminar e *injunction* permanente contra la Asociación de Propietarios de la Urbanización Dorado del Mar Hotel and Country Club Inc.; su presidenta, Sra. Mildred Noemí García y su administrador, Eduardo Loayza.

La demanda se presentó debido a que el 28 de junio de 2021, la señora Mildred Noemí García convocó a los propietarios para una asamblea extraordinaria. El propósito de la asamblea era proponer una enmienda al código comunitario de la urbanización Dorado del Mar y con esta, prohibir los arrendamientos a corto plazo de menos de 6 meses. El 15 de julio de 2021, procedieron con la votación para enmendar el código comunitario. Las enmiendas se aprobaron por la mayoría de los que estuvieron presentes. A raíz de lo anterior, la parte peticionaria solicitó sentencia declaratoria para que la enmienda al código comunitario fuese declarada nula por falta de autoridad de la junta de directores y porque esta a su vez, violentaba el derecho constitucional de los peticionarios al uso y disfrute de su propiedad privada.

En la referida demanda, los propietarios explicaron que las únicas restricciones que limitaban los derechos de propiedad de los dueños de las villas son las contenidas en la escritura de servidumbres en equidad. Añadieron que en esta escritura se encuentra reconocido el derecho de poder

alquilar las villas. También enfatizaron que la escritura no limita, prohíbe, ni regula en forma alguna el tiempo por el cual pueden arrendar las villas. Hicieron hincapié en que la escritura únicamente exige un uso residencial, y prohíbe expresamente el uso de estas para actividades comerciales.

Los propietarios argumentaron también que el hecho de que las villas podían ser alquiladas a corto plazo fue un factor determinante para que decidiesen comprar en Dorado del Mar. Básicamente, mencionaron que realizaron la inversión para explotarla económicamente a través del arrendamiento vacacional. Los propietarios mencionaron que por muchos años la junta de directores de Dorado del Mar permitió e incluso reguló todo lo relativo a los arrendamientos a largo y corto plazo dentro de las villas. Por todo esto, solicitaron al foro primario que emitiera un *injunction* preliminar e *injunction* permanente, para anular la enmienda que les impidió a los propietarios arrendar sus villas a corto plazo.

La asociación sometió una contestación a la demanda y solicitud de desestimación. En esta, negó que las enmiendas al código comunitario de Dorado del Mar fueran nulas, ultra vires o inoficiosas. La asociación fundamentó su acción de enmendar el código en que los arrendamientos a corto plazo de las villas se habían convertido en un problema de seguridad para la comunidad. La asociación argumentó que la escritura de condiciones restrictivas le otorga facultades

para tomar medidas enfocadas en salvaguardar la seguridad, paz y convivencia de la comunidad. Para sustentar su postura, explicó que los arrendamientos a corto plazo equivalen a un uso comercial de las villas prohibido por la cláusula de la escritura de servidumbres en equidad que limita el uso de estas a uno residencial. Finalmente, solicitó la desestimación de la demanda por entender que esta se había tornado académica luego de la aprobación del código comunitario en el cual se prohibieron los arrendamientos a corto plazo. Junto con la contestación a la demanda y solicitud de desestimación, la asociación sometió varias declaraciones juradas, de residentes de la Urbanización Dorado del Mar en las cuales se narraron incidentes de "desórdenes" provocados por inquilinos a corto plazo de algunas villas.

Al pleito compareció otro de los propietarios de las villas de Dorado del Mar, el Sr. José Carreras Acevedo (señor Carreras Acevedo) y presentó su solicitud de intervención en donde repitió los reclamos de los demás propietarios. El foro primario escuchó a las partes y la asociación presentó su réplica.

El 5 de diciembre de 2022, el foro primario desestimó la demanda. Al analizar la escritura matriz, el foro primario consideró que, al prohibir los arrendamientos a corto plazo, la asociación no limitó de forma alguna el derecho propietario. El foro primario determinó que la asociación solo estaba cumpliendo con su obligación

contractual de velar por la paz y la seguridad de la urbanización. La sentencia hizo hincapié en que no adjudicó derechos o hechos materiales en controversia ni pasó juicio alguno sobre la veracidad de los actos imputados por la asociación a los arrendatarios de los propietarios. Dicho foro consideró que la existencia o recurrencia de esos hechos no tenían tangencia en la facultad de la asociación de exigir el cumplimiento de las condiciones restrictivas y su poder de velar por la seguridad y sana convivencia. El foro primario, basando su análisis exclusivamente en la escritura matriz de la urbanización, desestimó la demanda. A pesar de lo anterior, el tribunal acogió el argumento presentado por la asociación de que los arrendamientos a corto plazo constituyen un uso comercial vedado por las restricciones voluntarias.

Los propietarios apelaron ante el Tribunal de Apelaciones. Simultáneamente, presentaron allí una moción en auxilio de jurisdicción para impedir que entrara en vigor la prohibición a los arrendamientos a corto plazo, mientras se ventilaba su apelación. El foro apelativo intermedio declaró no ha lugar la moción. Luego, el señor Carreras Acevedo sometió ante el foro apelativo intermedio su propio recurso de apelación para solicitar que se revocara la sentencia del foro primario, junto con una moción solicitando la consolidación de su recurso de apelación con el de los peticionarios. El foro intermedio consolidó ambos recursos. Luego, dictó la sentencia en la

que confirmó la decisión del foro primario. Es importante destacar que el foro apelativo intermedio consideró el recurso de *novo*, por entender que tenía ante sí una moción de sentencia sumaria. A esos fines, expresó que "[l]a realidad es que el TPI concedió correctamente la desestimación sumaria que solicitaron los allí demandados. En esta sentencia estamos confirmando esa sentencia del TPI […]". Ap. TS pág. 663. El foro intermedio puntualizó que "Lo resuelto por el TPI y que aquí confirmamos es que esa enmienda es un ejercicio válido de los poderes que emanan de la escritura de condiciones restrictivas, como fuente principal para reglamentar el uso y disfrute de las propiedades residenciales que allí ubican." Íd.

Inconformes, los peticionarios acuden ante este Tribunal mediante recurso de *certiorari*. Señalan que el Tribunal de Apelaciones se equivocó al catalogar los arrendamientos a corto plazo como un uso comercial y como consecuencia, brindarle a la asociación el poder para prohibirlos. Añadieron que eso infringe sus derechos constitucionales como propietarios.

El señor Carreras Acevedo también compareció ante este Tribunal mediante recurso de *certiorari*. Ante nosotros, planteó los mismos errores señalados por los propietarios, pero añade que el Tribunal de Apelaciones se equivocó al resolver que una asociación creada en virtud de una escritura que establece una servidumbre en equidad podía ir

por encima de la escritura y crear una condición restrictiva nueva que el desarrollador no estableció.

II

A. *Desestimación al amparo de la Regla 10.2.(5) de Procedimiento Civil*

La Regla 10.2 de Procedimiento Civil nos explica que una defensa de hechos o de derecho en contra de una reclamación deberá exponerse en una de las alegaciones responsivas, a menos que, la parte que alegue ciertas defensas, decida hacerlo mediante una moción debidamente fundamentada. Regla 10.2 de Procedimiento Civil de 2009, 32 LPRA Ap. V. Una de esas defensas es que la parte demandante deje de exponer una reclamación que justifique la concesión de un remedio. Íd. Anteriormente hemos mencionado que, al momento de atender una moción de desestimación por este fundamento, el tribunal debe tomar como ciertos todos los hechos bien alegados y aseverados de manera clara y concluyente en la demanda. González Méndez v. Acción Social, 196 DPR 213 (2016). Si luego de esto, el tribunal no alberga dudas de que el demandante no tiene un remedio en derecho, entonces procede la desestimación. Véase Colón v. Lotería, 167 DPR 625, 649 (2006). Las alegaciones deben interpretarse conjunta y liberalmente de la manera más favorable posible para la parte demandante. Íd. Véase también, Dorante v. Wrangler of PR, 145 DPR 408, 414 (1998). Por lo tanto, cuando se presente una moción de desestimación al amparo de la Regla 10.2(5) de

Procedimiento Civil, los tribunales deben determinar si a la luz de la situación más favorable al demandante y luego de resolver toda duda a favor de este, la demanda en sí misma es suficiente para constituir una reclamación válida. Aut. Tierras v. Moreno & Ruiz Dev. Corp., 174 DPR 409, 429 (2008). Esto quiere decir que, cuando se alega que una demanda no aduce causa de acción, "esta defensa debe fundamentarse de la faz de esa demanda". Íd. Por ello, cuando el tribunal resuelva una moción para desestimar, no puede considerar asuntos extraños a los contenidos en las alegaciones. R. Hernández Colon *Práctica Jurídica de Puerto Rico, Derecho Procesal Civil* 6.ª Ed. Lexis Nexis pág. 307.

### B. *Restricciones voluntarias sobre fincas*

El Código Civil de Puerto Rico regula las restricciones voluntarias sobre fincas (antes llamadas servidumbres en equidad). Allí se menciona que son restricciones voluntarias de carácter real aquellas limitaciones de uso, construcción, y ornato o fines análogos que se imponen a las fincas. Art. 813 del Código Civil, 31 LPRA sec. 8081. El Art. 814 del Código Civil 31 LPRA sec. 8082, añade los requisitos para constituir las restricciones voluntarias y establece que para que estas sean válidas y eficaces contra todos es obligatorio que: (a) sean razonables; (b) obedezcan a un plan general de mejoras; (c) sean compatibles con la política pública sobre uso de terrenos; (d) consten de manera específica en un instrumento público; y (e) estén inscritas en el Registro

de la Propiedad. El Art. 815, del Código Civil 31 LPRA sec. 8083, nos dice que las restricciones voluntarias pueden constituirse: (a) por negocio jurídico bilateral o multilateral celebrado por todos los propietarios de las fincas afectadas; o (b) por negocio jurídico unilateral del propietario de la finca afectada.

El propio Código Civil nos menciona en su Art. 818, 31 LPRA sec. 8086, cuáles son las razones que permiten la modificación o extinción de las restricciones voluntarias. El referido artículo dispone que las restricciones voluntarias sobre fincas pueden modificarse o extinguirse: (a) en la forma y por las causas dispuestas en el acto jurídico que las establece; (b) por acuerdo unánime de los interesados, ya sea mediante la eliminación total o parcial de las restricciones o mediante la constitución de nuevas restricciones que alteren las anteriores; (c) por efecto del tiempo o por realizarse la condición, si así se constituyeron; (d) por renuncia o abandono de los propietarios que reciben los beneficios de las restricciones mediante conducta que demuestre una intención de renunciar a ellos o abandonarlos; (e) por expropiación forzosa, si las restricciones son incompatibles con el uso público de la finca expropiada; y (f) por cambios radicales del vecindario. Art. 818, supra.

En nuestra jurisdicción reconocimos por primera vez la figura de las restricciones voluntarias sobre fincas en 1913. Véase Glines *et al.* v. Matta *et al*., 19 DPR 409

(1913). Anteriormente señalamos que las condiciones restrictivas se constituyen unilateralmente por el urbanizador para limitar las facultades de los futuros adquirentes con respecto al uso destinado y las edificaciones permisibles dentro de la finca gravada. Rodríguez *et al*. v. Gómez *et al*., 156 DPR 307 (2002). Incluso, antes de la aprobación del nuevo Código Civil, este Tribunal ya había establecido que para asegurar la validez y eficacia de las restricciones voluntarias sobre fincas era necesario que estas se establezcan como parte de un plan general de mejoras, consten de forma específica en el título de la finca y que sean inscritas en el Registro de la Propiedad. Residentes Parkville v. Díaz, 159 DPR 374 (2003). Una vez se cumple con estos requisitos, las servidumbres pasan a ser derechos reales con eficacia *erga omnes*. Rodríguez *et al*. v. Gómez *et al*., supra, pág. 312.

Las restricciones voluntarias sobre fincas son cláusulas restrictivas a beneficio de los presentes y futuros adquirentes. Íd. Estas imponen cargas o gravámenes especiales, como parte de un plan general de mejoras para el desarrollo de una urbanización residencial en esa finca. Íd. Estas condiciones restrictivas en las urbanizaciones residenciales tienen el propósito de preservar la belleza, la comodidad y la seguridad del reparto residencial según éste es concebido por sus arquitectos y constructores. Park Tower, S.E. v. Registradora, 194 DPR 244 (2015) citando a

Sands v. Ext. Sagrado Corazón, Inc., 103 DPR 826, 827 (1975).

Estas condiciones restrictivas se constituyen unilateralmente por el urbanizador para limitar las facultades de los futuros adquirentes con respecto al uso destinado y las edificaciones permisibles dentro de la finca gravada. Park Tower, S.E. v. Registradora, supra, pág. 253. Basado en lo anterior, es correcto decir que una servidumbre en equidad es una limitación al disfrute de la propiedad privada de los futuros adquirentes. Por esta razón es importante destacar que, en términos jurídicos, una restricción voluntaria sobre una finca se considera un contrato entre las partes debido a que a través de estas se acuerda gravar sus propiedades para delimitar su uso o el tipo de edificación que sobre ellas puede efectuarse. Dorado del Mar Estates Homeowners Association, Inc. v. Weber, 203 DPR 31, 41 (2019). Por tanto, debido a que una restricción voluntaria sobre la finca se considera un contrato, resulta lógico recurrir a la teoría contractual para interpretarlas.

Al utilizar este marco teórico, debemos aplicar la doctrina fundamental en el ámbito de las obligaciones y contratos, la cual afirma que si los términos de un negocio jurídico bilateral son claros y no dejan duda sobre la intención de las partes, se estará al sentido literal de sus palabras. Véase Art. 354 del Código Civil, 31 LPRA sec. 6342. Por esta razón, al interpretar las restricciones

voluntarias sobre fincas, al igual que cualquier contrato, lo primordial es conocer cuál fue el verdadero fin que se perseguía al momento de establecerlas. Residentes Parkville v. Díaz, supra, pág. 385. Una vez reconocida la validez y vigencia de las cláusulas restrictivas, los tribunales debemos hacer cumplir a cabalidad los propósitos del acuerdo al que las partes aceptaron someterse cuando adquirieron la propiedad gravada, salvo que sean contrarios a la ley, a la moral o al orden público. Colón v. San Patricio Corporation, 81 DPR 242, 254 (1959). Véase también Art. 1231 del Código Civil, 31 LPRA sec. 5141.

**C. Derecho al disfrute de la propiedad privada**

En Asociación Playa Húcares v. Rodríguez, 167 DPR 255 (2006) (Sentencia), nos enfrentamos a una controversia que comparte similitudes con la que hoy tenemos ante nuestra consideración. En aquella ocasión la controversia giraba en torno a determinar si una servidumbre en equidad impedía arrendar las propiedades en una urbanización. Notamos que las restricciones voluntarias sobre fincas que gravaban la urbanización expresamente permitían el arrendamiento de las propiedades. Dicha restricción establecía que los dueños estaban autorizados para ofrecer en arrendamiento sus propiedades, siempre y cuando se utilizaren para fines residenciales exclusivamente y por un término no menor de una semana. Por lo tanto, rechazamos el planteamiento de que el alquiler estaba prohibido por la restricción

voluntaria sobre la finca. Asociación Playa Húcares v. Rodríguez, supra, pág. 275.

En aquella ocasión entendimos que una asociación estaba impedida de modificar, enmendar o dejar sin efecto, mediante reglamento, las restricciones voluntarias sobre fincas establecidas en la escritura pública. Íd., pág. 268. Resaltamos que enmendar el reglamento de una asociación de propietarios, con la intención de modificar unas restricciones voluntarias sobre fincas y limitar el derecho de propiedad de los residentes, no era una forma válida de alterarlas. Íd. Llegamos a aquella decisión debido a que existe un derecho propietario reconocido en la Constitución de Puerto Rico que una asociación no puede limitar o restringir a través de un reglamento. Íd.

No existe duda de que el derecho a la propiedad es de alto interés público en nuestro ordenamiento. Hemos reconocido que "la génesis del concepto del Estado como el ente jurídico que conocemos hoy surge de teorías políticas que aspiraban a dar una máxima protección al derecho de los individuos a defender y disfrutar su propiedad". Rivera García v. Registradora, 189 DPR 628 (2013). La importancia del derecho a la propiedad en nuestro ordenamiento es de tal magnitud que una sección específica de la Constitución de Puerto Rico establece varias protecciones a este. El disfrute de la propiedad es uno de los pocos derechos que la Ley Suprema explícitamente dispone como de carácter fundamental. Rivera García v. Registradora, supra. (citando

al Art. II, Sec. 7, Const. PR, LPRA, Tomo 1, ed. 2008, pág. 296). Véase también Emda. V, Const. EE. UU., LPRA, Tomo 1.

### D. *Uso comercial y residencial de las propiedades*

En Puerto Rico, los impuestos para la industria hotelera y de pequeñas hospederías están regulados por la Ley del Impuesto sobre el Canon por Ocupación de Habitación del Estado Libre Asociado de Puerto Rico. Ley Núm. 272-2003, 13 LPRA sec. 2271 *et seq*. Esta ley define un alojamiento suplementario a corto plazo (s*hort term rentals*) como cualquier instalación, edificio o parte de un edificio, dado en alquiler por un período de tiempo menor a noventa días, dedicado al alojamiento de personas mediante paga, cuya instalación, edificio o parte del mismo no sea un hotel, condohotel, hotel todo incluido, motel, parador, pequeña hospedería, casa de hospedaje u hotel de apartamentos. Dicho término incluirá, sin limitarse a, cualquier tipo de propuesta de alojamiento alternativo como casas, apartamentos, cabañas, villas, casas rodantes (móviles), flotantes o botes, entre otros conceptos de arrendamiento por un término menor de noventa días. Véase Art. 2 de la Ley Núm. 272-2003, 13 LPRA sec. 2271. La antedicha ley no establece nada sobre el carácter residencial o comercial de los alojamientos a corto plazo en residencias privadas. Tampoco delimita los lugares en los cuales está permitido o prohibido establecer este tipo de arrendamiento.

Debido a esta incertidumbre que existe en Puerto Rico con relación a los arrendamientos a corto plazo y el uso residencial de las propiedades, atendimos el caso Consejo de Titulares v. Chamah Martínez, 202 DPR 173 (2019). Este caso fue desestimado eventualmente porque se tornó académico. La controversia en aquella ocasión requería evaluar la compatibilidad de los arrendamientos a corto plazo con el uso residencial al que estaba destinado un bien inmueble sujeto al Régimen de Propiedad Horizontal, conforme a su escritura matriz y reglamento. La controversia tuvo su origen cuando el Consejo de Titulares del Condominio Condesa del Mar presentó una petición de sentencia declaratoria, interdicto preliminar y permanente para que se le ordenara al señor Chamah Martínez que cesara y desistiera de alquilar su unidad en calidad de hospedería. El consejo de titulares entendía que esa actividad equivalía a una explotación comercial prohibida por las disposiciones contenidas en la escritura matriz y el reglamento constitutivo del régimen de propiedad horizontal. La representación legal del señor Chamah Martínez indicó que no surgía de la escritura matriz o del reglamento del condominio alguna disposición que prohibiera los alquileres a corto plazo. La controversia llegó ante nuestra consideración mediante recurso de *certiorari* y para atenderla correctamente señalamos una vista oral.

Durante la vista, el representante legal del Consejo de Titulares habló sobre las posibles enmiendas al

reglamento del condominio dirigidas a prohibir los arrendamientos a corto plazo. Luego de la vista, el Consejo de Titulares compareció para informar que habían aprobado y presentado ante el Registro de la Propiedad una enmienda. Esta expresaba que el condominio era exclusivamente residencial y que ningún titular estaba autorizado para establecer en el edificio ninguna forma de explotación comercial. La enmienda prohibió los arrendamientos por noches, por fines de semana, a corto plazo en las aplicaciones "Homeaway" o "Airbnb". Ante ese desarrollo fáctico determinamos que la controversia se había tornado académica y desestimamos el recurso. Llegamos a esa determinación debido a que el Consejo de Titulares de un condominio sujeto al Régimen de Propiedad Horizontal está facultado por ley para, mediante reglamento, aclarar el alcance de las cláusulas en la escritura matriz relacionadas con el uso que se le brinda a los apartamentos que lo componen. Ley de Condominios de Puerto Rico, Ley Núm. 129-2020, 31 LPRA sec. 1921l *et seq.*

En vista de que el recurso fue desestimado, no tomamos una determinación en aquel momento sobre cuáles actividades alteran el carácter residencial de una propiedad en nuestra jurisdicción. Tampoco tomamos esa determinación en <u>Fernández Martínez v. RAD-MAN San Juan III-D, LLC</u>, 208 DPR 310 (2021). En aquella ocasión, únicamente tuvimos que resolver si un complejo de viviendas subdivididas para alquiler a largo plazo violentaba una restricción

voluntaria sobre una finca que exigía un uso unifamiliar para los terrenos dentro de la urbanización. Íd. pág. 317. Nuestra determinación fue que el demandado no estaba alquilando sus apartamentos a corto plazo pues solo pudimos comprobar que subdividió los apartamentos para arrendarlos a largo plazo. Íd. pág. 341.

Ahora bien, en ese momento a pesar de haber determinado que evaluar la duración de los arrendamientos era innecesario para disponer de la controversia, este Tribunal sugirió que arrendar los apartamentos a corto plazo convertía el uso del inmueble a uno comercial. Íd., pág. 343. **Sin embargo, esas expresiones forman parte del *dictum* de la Opinión y no pueden ser consideradas para pautar categóricamente que un arrendamiento a corto plazo varía el uso residencial de una vivienda**. Recordemos que el "*obiter dictum*" no sienta precedente jurídico alguno. Ortiz v. Panel F. E. I., 155 DPR 219, 252 (2001).

El análisis requerido para determinar si un arrendamiento a corto plazo varía el uso residencial de una propiedad convirtiéndolo en uno comercial, amerita un estudio profundo y minucioso. Recordemos que en Puerto Rico aún no hemos resuelto esta interrogante sin ambages. Por tanto, conviene analizar —a modo ilustrativo— lo que han establecido otras jurisdicciones en Estados Unidos sobre lo que configura uso residencial y comercial de una propiedad y cuáles actividades van en contra del uso residencial exclusivo.

El Tribunal Supremo del estado de Washington tuvo que decidir una controversia parecida a la que hoy nos ocupa. Wilkinson v. Chiwawa Communities Ass'n, 180 Wash.2d 241 (2014). En ese caso, una asociación de residentes modificó los reglamentos de su comunidad para prohibir los arrendamientos a corto plazo. Las restricciones originales de la comunidad prohibían el uso comercial de las propiedades. Por esta razón, el tribunal consideró que, si un inquilino arrienda su propiedad con un fin vacacional en donde los huéspedes utilizan la vivienda para comer, dormir y otros fines residenciales, para todos los efectos le están dando un uso residencial, independientemente de cuan corta sea la duración del alquiler. Íd., pág. 252. El más alto foro de Washington entendió que el pago de impuestos empresariales o impuestos de alojamiento tampoco le restan valor al carácter residencial de dicho uso y no lo convierten en uno comercial. Íd., pág. 253. Por esta razón, el Tribunal determinó que un arrendamiento a corto plazo no va en contra de una prohibición al uso comercial de una propiedad.

En el estado de Arkansas, el Tribunal Supremo estatal también tuvo que decidir si un arrendamiento a corto plazo violenta la prohibición de uso comercial de una restricción voluntaria sobre una finca. Vera Lee Angel Revocable Trust v. Jim O'Bryant Joint Revocable Trust, 537 S.W.3d 254 (Ark. 2018). El máximo foro judicial de Arkansas explicó que, en esa jurisdicción, las restricciones voluntarias sobre

fincas se interpretan de manera restrictiva. Íd. pág. 4. Basándose en esto, decidió que lo que define el uso residencial que se le da a una propiedad es la actividad que en ella se realiza. Íd. El Tribunal fue más allá y mencionó que, si una comunidad pretende prohibir el alquiler de una propiedad a corto plazo, deberá hacerlo en una disposición expresa dentro de las restricciones. Íd.

Recientemente, el Tribunal de Estados Unidos para el Distrito de Hawai'i siguió el mismo razonamiento. El tribunal tuvo que analizar si los arrendamientos a corto plazo de una propiedad alteran el carácter residencial al cual están destinadas. Hawaii Legal Short-Term Rental Alliance v. City and County of Honolulu et al., 31 D. Haw. 2022. La decisión de este caso fue emitida luego de que la ciudad de Honolulu decidiera prohibir los arrendamientos de propiedades por menos de tres meses de duración. A raíz de la ordenanza, varios propietarios de la ciudad buscaron que esta fuera declarada nula en el tribunal federal. El tribunal federal de distrito declaró nula la ordenanza y le prohibió a la ciudad implementarla.

El tribunal enfocó su razonamiento en el significado común del término "residencial". Concluyó que uso residencial equivalía a un uso para actividades y beneficios de la vida ordinaria como, por ejemplo, comer, bañarse, dormir, guardar sus pertenencias y vehículos, y disfrutar del paisaje y la comunidad. Hawaii Legal Short-Term Rental Alliance v. City and County of Honolulu et al.,

supra, pág. 7. El tribunal rechazó el argumento de la ciudad de que la circulación frecuente de los huéspedes no se asocia tradicionalmente con la vida familiar. Por lo tanto, concluyó que un alquiler de menos de noventa días en una residencia no configura un uso comercial. Íd.

Del mismo modo, en Alabama, el Tribunal de Apelaciones explicó que la palabra "comercial" se utiliza comúnmente para describir una amplia gama de negocios y empresas comerciales que involucran el intercambio de bienes o servicios por dinero. Slaby v. Mountain River Estates Residential Ass'n, Inc., 100 So.3d 569 (2012). En aquel momento, el Tribunal de Apelaciones de Alabama debía determinar si proporcionar a las personas el uso de una casa a cambio de dinero configuraba un uso comercial. Aunque el Tribunal comparó esta práctica con la que se realiza en un motel, en donde se sirve desayuno y se pagan impuestos, determinó que el significado simple y ordinario de "fines residenciales" es aquel en el que las personas residen, habitan, o establecen sus hogares. Íd., pág. 578. De esta manera, el tribunal distinguió un arrendamiento a corto plazo del uso comercial o de negocios y determinó que mientras los inquilinos coman, duerman y realicen cualquier actividad propia del hogar, están haciendo un uso residencial. Íd., pág. 579.

Por último, el Tribunal de Apelaciones del estado de Florida, también se enfrentó a una controversia similar a la que hoy atendemos. Santa Monica Beach Property Owners

Association, 219 So.3d 111 (2017). En este caso, una asociación de propietarios alegó que los alquileres vacacionales a corto plazo que realizaban algunos residentes de la comunidad violaban las restricciones voluntarias sobre fincas que limitaban el uso de las propiedades a uno estrictamente residencial. El Tribunal de Apelaciones de Florida explicó que al momento de decidir si una práctica configura un uso residencial o comercial, el factor determinante no es la duración del arrendamiento, sino el carácter del uso real de la propiedad por quienes residen en ella. Santa Monica Beach Property Owners Association, supra, pág. 114. El tribunal continuó explicando que la naturaleza del uso de las propiedades no se transforma de residencial a comercial por el simple hecho de que estas puedan estar sujetas a un esquema regulatorio o de licenciamiento. Íd.

Aunque en varias jurisdicciones de Estados Unidos los tribunales han sido consistentes al decidir que los arrendamientos a corto plazo no varían el uso residencial de una propiedad, el Tribunal de Apelaciones de Kentucky decidió no acoger esta postura. Vonderhaar v. Lakeside Place Homeowners Ass'n, Inc., NO. 2012-CA-002193-MR (Ky. Ct. App. Aug. 8, 2014). El tribunal mencionó que la razón para tomar un rumbo distinto en la interpretación de lo que configura un uso residencial, está relacionada a la interpretación de las restricciones voluntarias sobre fincas en ese estado. Según el Tribunal de Apelaciones de

Kentucky, en su ordenamiento jurídico las restricciones voluntarias sobre fincas son consideradas como una protección para los dueños de la propiedad y para la población en general y no se consideran restricciones al uso de la propiedad. Íd. pág. 3. Eso es distinto a la norma en Puerto Rico. Con esta interpretación, concluyó que como estos arrendamientos a corto plazo se anuncian en varios sitios web y pagan los impuestos requeridos por los hoteles y moteles, estos equivalen a un negocio. Íd., págs. 4-5.

## III

Los propietarios expusieron —en síntesis— que los foros inferiores se equivocaron al desestimar su recurso de *injunction* preliminar y permanente con el que pretendían que la Asociación de Propietarios desistiera de la prohibición de alquilar sus propiedades a corto plazo. A su vez, argumentaron que los foros inferiores erraron al determinar que la enmienda al código comunitario no constituía una violación del derecho constitucional de los peticionarios al uso y disfrute de su propiedad. Específicamente alegan que el error se cometió al realizar la referida determinación basándose en hechos controvertidos que no podían ser tomados como ciertos al resolver una moción de desestimación por las alegaciones. Estoy de acuerdo con los propietarios. El foro de instancia incidió al desestimar el reclamo de la parte peticionaria basándose exclusivamente en las alegaciones. Tal y como enfaticé en la parte expositiva de esta Opinión de

conformidad, los foros primarios sí están facultados para desestimar la acción por las alegaciones, **pero solo luego de interpretarlas liberalmente a favor de la parte demandante y asegurarse de que no existe duda de que**, **basado en estas, no posee un remedio en derecho.**

En la controversia de autos, el foro primario determinó que el documento objeto de enmienda fue el código comunitario y no la escritura de condiciones restrictivas. Por eso, concluyó que los propietarios carecían de un remedio adecuado en derecho para vindicar su reclamación. Ap. TS pág. 446. El foro de instancia también resolvió —apoyándose en expresiones de este Tribunal **que no constituyen precedente** y sin pasar prueba para sustentarlo— que un arrendamiento a corto plazo, de por sí, constituye un uso comercial. Íd. Con este razonamiento, el foro primario determinó que los arrendamientos a corto plazo alteraron el uso residencial, exigido a las propiedades de la urbanización Dorado del Mar en la escritura de servidumbres de equidad.

Considero que el foro primario se equivocó al determinar mediante las alegaciones que, al amparo de las condiciones restrictivas y el carácter residencial de la urbanización, la asociación ostentaba facultad para prohibir los arrendamientos a largo plazo, conforme con su autoridad para evitar el desorden, bullicio, gritos o fiestas. De igual forma estimo que el foro primario incidió al resolver que alquilar una propiedad a corto plazo

constituye darle a esta un uso comercial en contravención a la escritura matriz. Recordemos que en Puerto Rico aún no se ha resuelto categóricamente cuáles actividades alteran el carácter residencial de una propiedad. Por eso, el foro primario, no podía, sin pasar juicio, ni realizar un estudio detallado y fundamentándose en expresiones de este Tribunal que no constituyen precedente, determinar que los arrendamientos a corto plazo constituyen una actividad comercial. Ahora bien, es importante subrayar que, no estamos en posición de resolverlo en esta ocasión. La etapa procesal del caso ante nuestra consideración no nos permite disponer de esta controversia y pautar qué tipo de actividades altera el uso residencial al que están destinadas las propiedades, antes de que se presente prueba y el caso quede sometido en los méritos en el foro primario.

Nuestra tarea en este caso se encuentra limitada a determinar si el foro primario se equivocó o no al desestimar por las alegaciones el recurso de *injunction* preliminar y permanente presentado por los propietarios. Cónsono con lo anterior y según expliqué en la parte expositiva de esta Opinión de conformidad, existe una tendencia mayoritaria en Derecho que establece que los arrendamientos a corto plazo de por sí no configuran un uso comercial. A tales efectos, si el foro primario no hubiese desestimado y hubiera hecho un estudio detallado sobre estas tendencias en el Derecho, era posible que concluyera

que los propietarios de las villas de la Urbanización Dorado del Mar pudieran tener un remedio en derecho.

En conclusión, para determinar correctamente si los propietarios carecían o no de un remedio, era necesario que el foro primario analizara si en este caso, las actividades realizadas por los propietarios al alquilar sus propiedades a corto plazo violentaban alguna de las servidumbres en equidad enumeradas en la escritura matriz. Para lograr esto, procedía que el foro primario realizara vistas, permitiera descubrimiento de prueba, recibiera evidencia pertinente y tomara una determinación en los méritos. Por todo esto, estoy de acuerdo en que no procedía la desestimación del recurso presentado por los peticionarios al amparo de la Regla 10.2(5) de Procedimiento Civil, supra.

Rafael L. Martínez Torres
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Luis Morales Rivera; Ariel Berríos Negrón; Leticia Álvarez Valencia t/c/c Leticia Berríos; Scott Popp, Carlos Pagán; Miguel Pereira-Ruiz; Claude Nogard, Maxine Nogard Cameron<br><br>      Recurridos<br><br>          v.<br><br>Asociación de Propietarios de la Urbanización Dorado del Mar Hotel & Country Club, Inc.; Mildred Noemí García; Eduardo Loayza<br><br>      Recurridos<br><br>José Carreras Acevedo<br><br>      Peticionario<br><br>Luis Morales Rivera; Ariel Berríos Negrón; Leticia Álvarez Valencia t/c/c Leticia Berríos; Scott Popp, Carlos Pagán; Miguel Pereira-Ruiz; Claude Nogard; Maxine Nogard Cameron<br><br>      Peticionarios<br><br>          v.<br><br>Asociación de Propietarios de la Urbanización Dorado del Mar Hotel & Country Club, Inc.; Mildred Noemí García; Eduardo Loayza<br><br>      Recurridos | CC-2023-0364<br>CC-2023-0365 | *Certiorari* |

Opinión Disidente emitida por el Juez Asociado señor COLÓN PÉREZ.

En San Juan, Puerto Rico, a 14 de junio de 2024.

Por entender que, en lo relacionado a la causa de epígrafe, veníamos llamados a adentrarnos en los méritos de la controversia ante nuestra consideración para, de una vez y por todas, aclarar si los alquileres a corto plazo constituyen un uso residencial o un uso comercial de la propiedad, disentimos del curso de acción seguido por una mayoría de este Tribunal en el presente caso.

**Como más adelante explicaremos, estamos convencidos de que los alquileres a corto plazo, a todas luces, constituyen un uso comercial de la propiedad y ya era momento de así sentenciarlo.** La falta de uniformidad que existe en nuestro ordenamiento jurídico, sobre tan transcendental tema, así lo exigía.[1]

---

[1] Debemos tener presentes que la controversia hoy ante nuestra consideración ha sido muy debatida, dentro y fuera de los tribunales, durante los pasados años.

Como discutiremos, esta no es la primera vez que esta Curia se enfrenta a dicha interrogante.

Asimismo, el Tribunal de Apelaciones ha evaluado controversias similares, no habiendo podido establecer una norma específica. Véase, a modo de ejemplo, *Morales Rivera v. Asociación de Propietarios de la Urbanización Dorado del Mar Hotel & Country Club, Inc.*, BY2021CV03508, 2023 PR App. WL 3395901 (determinando que constituye un uso comercial); *Díaz Maldonado v. Parque del Monte Homeowners Ass'n, Inc.*, CA2022CV02791, 2023 PR App. WL 3371046 (determinando que no constituye un uso comercial); *Rodríguez Martínez v. Junta de Directores Condominio El Cantábrico*, C-SAN-2020-0007708, 2022 PR App. WL 1657439 (determinando que no constituye un uso comercial); *Visbal Castro v. Junta de Directores del Condominio Torre Marsella*, C-MAY-2017-0000319, 2018 PR App. WL 4538332 (determinando que no constituye un uso comercial); *Consejo de Titulares del Condominio La Torre Miramar v. O'Bryan Luter*, KLAN201800672, 2018 PR App. WL 4859155 (determinando que constituye un uso comercial); y *Tosado Collins v. Consejo De Titulares Del Condominio Montecielo*, KLRA201600780, 2017 PR App. WL 6941945 (determinando que constituye un uso comercial).

A su vez, nuestra Asamblea Legislativa ha presentado proyectos de ley dirigidos a regular este tipo de alquiler. Sobre el particular, véase: (1) P. de la C. 1557 de 1 de noviembre de 2022, 4ta Sesión Ordinaria, 19na Asamblea Legislativa; y (2) P. de la C. 1446 de 25 de agosto de 2022, 4ta Sesión Ordinaria, 19na Asamblea Legislativa.

Como una mayoría de mis compañeros de estrado declinó emprender dicha tarea, procedemos, -- desde la disidencia --, a así hacerlo. Veamos.

I.

Los hechos medulares que dan margen al presente litigio, los cuales se resumen con particular precisión en la *Sentencia* que hoy emite este Tribunal, no están en controversia. En síntesis, el 3 de septiembre de 2021 varios propietarios de ciertos inmuebles denominados "villas", ubicadas dentro de la Urbanización Dorado del Mar (en adelante y en conjunto, "los propietarios de villas en la Urbanización Dorado del Mar"), presentaron ante el Tribunal de Primera Instancia una *Demanda* en contra de la Asociación de Propietarios de la Urbanización Dorado del Mar Hotel and Country Club Inc., su presidenta, la Sra. Mildred Noemí García, y su administrador, el Sr. Eduardo Loayza (en adelante y en conjunto, "Asociación").

En la referida *Demanda*, los propietarios de villas en la Urbanización Dorado del Mar solicitaron al foro primario una sentencia declaratoria, un *injunction* preliminar y un *injunction* permanente. Según explicaron, el 28 de junio de 2021 la Asociación convocó a los propietarios de villas en la Urbanización Dorado del Mar para una asamblea extraordinaria, con el propósito de proponer unas enmiendas

---

De igual forma, algunos municipios han presentado medidas al respecto. Véase: (1) Proyecto de Ordenanza Núm. 21-2022 de Isabela; (2) Boletín Administrativo #7 de 2021 de Dorado; y (3) Boletín Administrativo #39, Serie 2022-23, de San Juan.

al Código Comunitario de la urbanización dirigidas a prohibir los alquileres por un periodo menor de seis (6) meses, entiéndase, los alquileres a corto plazo; enmiendas que fueron aprobadas por la mayoría de los propietarios de villas en la Urbanización Dorado del Mar que asistieron a la referida asamblea.

Como consecuencia de lo anterior, los propietarios de villas en la Urbanización Dorado del Mar solicitaron al Tribunal de Primera Instancia que la mencionada enmienda al Código Comunitario fuese declarada nula, por la Junta de Directores carecer de autoridad para realizar tal actuación. A su entender, para prohibir los alquileres a corto plazo era necesario enmendar la *Escritura de servidumbres en equidad* de la urbanización. Alegaron, además, que la actuación de la Asociación violentaba sus derechos constitucionales al uso y disfrute de la propiedad.

En particular, los propietarios de villas en la Urbanización Dorado del Mar argumentaron que las únicas restricciones que limitaban sus derechos de propiedad eran las contenidas en la referida *Escritura de servidumbres en equidad*. Enfatizaron que dicha escritura no limitaba, prohibía, ni regulaba, en forma alguna, el tiempo por el cual podían arrendar sus propiedades. **Más bien, la *Escritura de servidumbres en equidad* solo exigía que las mencionadas propiedades fuesen utilizadas para fines residenciales, prohibiendo expresamente su uso para actividades comerciales.**

Por otro lado, los propietarios de villas en la Urbanización Dorado del Mar también adujeron que el tener la facultad de poder alquilar sus villas a corto plazo había sido un factor determinante para estos optar por comprar en la referida urbanización. Finalmente, mencionaron que por muchos años la Junta de Directores de la Asociación permitió, e incluso reguló, todo lo relativo a los alquileres a largo y corto plazo de las villas.

Enterada de lo anterior, el 4 de octubre de 2021 la Asociación presentó ante el Tribunal de Primera Instancia su *Contestación a la demanda y solicitud de desestimación.* En ésta, la mencionada entidad negó que las enmiendas al Código Comunitario fueran nulas, *ultra vires* o inoficiosas. La Asociación fundamentó su acción de enmendar dicha normativa en que los alquileres a corto plazo de las villas se habían convertido en un problema de seguridad para la comunidad de la urbanización.

En ese sentido, la mencionada entidad argumentó que la *Escritura de servidumbres en equidad* le otorgaba facultades para tomar medidas dirigidas a salvaguardar la seguridad, paz y convivencia de la comunidad. **Asimismo, la Asociación arguyó que los alquileres a corto plazo equivalían a un uso comercial de las villas, prohibido por la cláusula de la mencionada escritura que limita el uso de éstas a uno residencial.**

Por último, la mencionada entidad solicitó la desestimación de la *Demanda* instada en su contra. Esto

último, por entender que el recurso se había tornado académico luego de la aprobación de las enmiendas al Código Comunitario prohibiendo este tipo de alquileres.

Cabe mencionar que el Sr. José Carreras Acevedo (en adelante, "señor Carreras Acevedo"), otro propietario de las villas de Dorado del Mar, presentó una *Solicitud de intervención* el 11 de octubre de 2021. En ésta, realizó los mismos reclamos de los demás demandantes.

Evaluados los argumentos de las partes, el 5 de diciembre de 2022 el foro primario dictó una *Sentencia* mediante la cual desestimó la *Demanda* a la que hemos hecho referencia. El Tribunal de Primera Instancia consideró, primero, que, al prohibir los alquileres a corto plazo, la Asociación no limitó de forma alguna los derechos de propiedad de los propietarios de villas en la Urbanización Dorado del Mar, sino que meramente cumplió con su obligación contractual de velar por la paz y la seguridad de la urbanización.

A su vez, el foro primario hizo hincapié en que no adjudicó derechos ni hechos materiales en controversia, ni pasó juicio sobre la veracidad de los actos imputados por la Asociación a los propietarios de villas en la Urbanización Dorado del Mar. Según su análisis, la existencia o recurrencia de esos hechos no tenía relevancia en la facultad de la Asociación de exigir el cumplimiento de las condiciones restrictivas, y de velar por la seguridad y sana convivencia de la comunidad. **Asimismo, determinó que los alquileres a**

**corto plazo constituían un uso comercial vedado por las restricciones voluntarias.**

En desacuerdo con la determinación del Tribunal de Primera Instancia, el 23 de febrero de 2023 los propietarios de villas en la Urbanización Dorado del Mar presentaron un recurso de *Apelación* ante el Tribunal de Apelaciones. De igual forma, presentaron una *Moción en auxilio de jurisdicción* para impedir que entrara en vigor la prohibición impugnada mientras se ventilaba su apelación. El foro apelativo intermedio declaró no ha lugar la referida moción de auxilio.

Por su parte, el señor Carreras Acevedo también sometió un recurso de *Apelación* ante el Tribunal de Apelaciones. Además, solicitó la consolidación de su recurso con el de los propietarios.

Examinados los alegatos de ambas partes, el 21 de abril de 2023 el foro apelativo intermedio dictó una *Sentencia*, en la cual confirmó la decisión del foro primario. **A su entender, la enmienda objeto del presente litigio había sido un ejercicio válido de la Asociación en consideración a los poderes que emanaban de la *Escritura de servidumbres en equidad*, relacionados con velar por la salud, seguridad y sana convivencia de la comunidad. Asimismo, señaló que el carácter residencial del área había sido trastocado por los alquileres a corto plazo.**

Inconformes aún, el 13 de junio de 2023 los propietarios de villas en la Urbanización Dorado del Mar presentaron ante

este Tribunal un *Recurso de certiorari*. En éste, señalan que el Tribunal de Apelaciones se equivocó al catalogar los alquileres a corto plazo como un uso comercial de la propiedad y, en consecuencia, reconocerle a la Asociación la autoridad para prohibirlos. Reiteraron que dicha actuación viola sus derechos constitucionales al uso y disfrute de la propiedad.

Por su parte, el 13 de junio de 2023 el señor Carreras Acevedo también compareció ante nos mediante una *Petición de certiorari*. Éste plantea, en esencia, argumentos similares a los esbozados por los propietarios. No obstante, añade que el foro apelativo intermedio se equivocó al resolver que una asociación creada en virtud de una escritura que establece una servidumbre en equidad podía ir por encima de la escritura matriz y crear una condición restrictiva nueva que el desarrollador de la urbanización no había establecido.

Examinados los argumentos de ambas partes, hoy, una mayoría de esta Curia determina que el curso de acción correcto para disponer del presente caso es devolver el mismo al Tribunal de Primera Instancia para que, mediante la presentación de evidencia, éste tome una nueva determinación. A su entender, dicho foro incidió al desestimar el reclamo basándose únicamente en las alegaciones de las partes.

Asimismo, algunos de mis compañeros de estrado, exponen que, en Puerto Rico, no se ha resuelto categóricamente si los alquileres a corto plazo alteran el carácter residencial de una propiedad. A pesar de reconocer lo anterior,

consideran que, por la etapa procesal en la que se encuentra el caso, no estamos en posición de resolver tal interrogante.

Como previamente adelantamos, dicho proceder no nos convence. **A nuestro juicio, esta era la oportunidad para aclarar si, -- en el contexto de una urbanización --, los alquileres a corto plazo constituyen un uso residencial o comercial de la propiedad.** Como una mayoría de este Tribunal no lo hizo, según ya mencionamos, procedemos, -- desde la disidencia -- a así hacerlo. Veamos.

## II.

## A.

De entrada, -- y en aras de poder realizar un acercamiento correcto e integral a las controversias ante nuestra consideración --, conviene comenzar esta parte de nuestro escrito repasando todo lo relacionado a las restricciones voluntarias sobre fincas, anteriormente conocidas como servidumbres en equidad. Esto, pues es mediante esta figura que, de ordinario, se imponen limitaciones de uso a una propiedad.

En esa dirección, sabido es que la Ley Núm. 55-2020, también conocida como el Código Civil de Puerto Rico de 2020, 31 LPRA sec. 5211 *et seq.* (en adelante, "Código Civil de 2020"), es la que regula todo lo concerniente a las restricciones voluntarias sobre fincas. Arts. 813-819, 31 LPRA secs. 8081-8087. En particular, el Art. 813 de la mencionada disposición legal las define como aquellas limitaciones de uso, construcción, y ornato o fines análogos

que se imponen a las fincas y que cumplen con los requisitos dispuestos en el Art. 814 del Código Civil de 2020. 31 LPRA sec. 8081.

Respecto al alcance de las restricciones voluntarias sobre fincas, este Tribunal ha sentenciado que éstas operan en beneficio de los presentes y futuros propietarios, pues "imponen cargas o gravámenes especiales como parte de un plan general para el desarrollo y la preservación de una urbanización residencial". *Residentes Parkville v. Díaz*, 159 DPR 374, 382-383 (2003); *Colón v. San Patricio Corporation*, 81 DPR 242, 246 (1959). Dichas cargas o gravámenes tienen como finalidad preservar, entre otras, el valor, la comodidad y seguridad del área, *Residentes Parkville v. Díaz*, *supra*, pág. 384; *Asoc. V. Villa Caparra v. Iglesia Católica*, 117 DPR 346, 351 (1986); *Sands v. Ext. Sagrado Corazón, Inc.*, 103 DPR 826, 827 (1975), "al limitar las facultades de los futuros adquirentes de los solares y de las viviendas en cuanto a hacer obras nuevas, efectuar cambios en las ya hechas y delimitar los usos a los que se puede destinar una propiedad". *Residentes Parkville v. Díaz*, *supra*, pág. 384.

Ahora bien, para que las restricciones voluntarias sobre fincas sean válidas y eficaces contra toda persona, el Código Civil de 2020 requiere que las mismas cumplan con varios requisitos. Entre estos, éstas deben: (1) ser razonables; (2) obedecer a un plan general de mejoras; (3) ser compatibles con la política pública sobre uso de terrenos; (4) constar de manera específica en un instrumento público;

y (5) estar inscritas en el Registro de la Propiedad. Art. 814, 31 LPRA sec. 8082.

En cuanto a los precitados requisitos, cabe destacar que la inscripción en el Registro de la Propiedad le otorga carácter real a estas limitaciones. Es decir, una vez inscritas en el Registro, las mismas "constituyen derechos reales oponibles erga omnes". *Fernández Martínez v. RAD-MAN San Juan III-D, LLC*, 208 DPR 310, 327 (2021). Así pues, mientras no sean modificadas o extinguidas, las restricciones voluntarias sobre fincas debidamente constituidas "suponen derechos reales que deben respetarse". *Dorado del Mar Ests. Homeowners Ass'n, Inc. v. Weber*, 203 DPR 31, 44 (2019); *Asoc. Vec. Urb. Huyke v. Bco. Santander*, 157 DPR 521, 535 (2002).

De otra parte, pero en estrecha relación con lo antes dicho, el Código Civil de 2020 establece que las restricciones voluntarias sobre fincas pueden constituirse mediante: (1) negocio jurídico bilateral o multilateral, celebrado por todos los propietarios de las fincas afectadas; o (2) por negocio jurídico unilateral del propietario de la finca afectada. Art. 815, 31 LPRA sec. 8083. En ese sentido, hemos señalado que estas restricciones se consideran "un contrato entre las partes, ya sea porque éstas acuerdan gravar sus propiedades para delimitar su uso o el tipo de edificación que se puede efectuar sobre éstas, o porque adquirentes posteriores de la propiedad gravada, conociendo las restricciones inscritas en el Registro de la Propiedad,

aceptan someterse a ellas". *Residentes Parkville v. Díaz*, *supra*, pág. 384.

Por último, sobre este extremo, es importante mencionar que las restricciones voluntarias sobre fincas pueden modificarse o extinguirse: (1) en la forma y por las causas dispuestas en el acto jurídico que las establece; (2) por acuerdo unánime de los interesados, ya sea mediante la eliminación total o parcial de las restricciones o mediante la constitución de nuevas restricciones que alteren las anteriores; (3) por efecto del tiempo o por realizarse la condición, si así se constituyeron; (4) por renuncia o abandono de los propietarios que reciben los beneficios de las restricciones mediante conducta que demuestre una intención de renunciar a ellos o abandonarlos; (5) por expropiación forzosa, si las restricciones son incompatibles con el uso público de la finca expropiada; y (6) por cambios radicales del vecindario. Art. 818, 31 LPRA sec. 8086. Véase también, *Fernández Martínez v. Rad-Man San Juan III-D, LLC*, *supra*. De conformidad con lo dispuesto en el Código Civil de 2020, es el propietario o titular de un derecho real que recae sobre una finca gravada con alguna restricción voluntaria quien puede solicitar al tribunal competente que declare su modificación o extinción, si se suscita alguno de los supuestos indicados antes. Art. 819, 31 LPRA sec. 8087.

B.

En lo relacionado al tema de las restricciones voluntarias sobre fincas como figura jurídica y su

correspondiente interpretación judicial, es importante mencionar que, en el año 2021, esta Curia tuvo ante su consideración el caso de *Fernández Martínez v. Rad-Man San Juan III-D, LLC, supra*. En esa ocasión, veníamos llamadas y llamados a determinar si en determinado vecindario existían cambios que justificasen modificar o extinguir ciertas restricciones voluntarias que gravaban el inmueble objeto de la controversia.

En particular, la Asociación Recreativa de Residentes de la Urbanización Santa María, Inc. y otros miembros de la comunidad (en adelante y en conjunto, "Asociación de Residentes de Santa María") presentaron una *Demanda* en contra de la corporación Rad-Man San Juan III-D (en adelante, "Rad-Man"), quien era titular de una vivienda en dicha urbanización. En esencia, los peticionarios en ese caso alegaron que la empresa había utilizado su propiedad en contravención a las restricciones voluntarias establecidas.

Específicamente, la Asociación de Residentes de Santa María adujo que Rad-Man había dedicado su propiedad al alquiler a corto plazo por medio de la plataforma de *AirBnB*, lo cual, a su entender, constituía un uso comercial del inmueble. Además, indicó que la compañía, al dividir el inmueble en varios apartamentos, había violentado la restricción respecto a que las residencias tenían que ser unifamiliares.

Rad-Man, por su parte, planteó que las restricciones voluntarias en cuestión se habían extinguido como resultado

de cambios radicales en el vecindario. En específico, destacó que se habían establecido comercios en el área, lo cual incrementó el flujo vehicular, y que se había implementado un sistema de control de acceso que separaba varias residencias, -- entre las cuales estaba la suya --, del resto de la comunidad.

Evaluados los planteamientos de las partes, esta Curia concluyó que los cambios en los alrededores de la urbanización no modificaron ni extinguieron las restricciones que pesaban sobre el complejo residencial. En esencia, estimamos que los mismos no impactaron la comunidad de forma directa o radical, pues solamente afectaron el área circundante.

**De igual forma, -- en lo pertinente al asunto hoy bajo estudio, y aunque ello no fue lo pautado en** *Fernández Martínez v. Rad-Man San Juan III-D, LLC*, *supra*, **por esa no ser la controversia principal que estábamos llamados a atender --, allí adelantamos que el alquiler de apartamentos a corto plazo constituía una variación del uso residencial de la propiedad.** *Íd.* págs. 343-344. **Es decir, conforme a nuestro criterio, este tipo de arrendamiento implica el uso de una propiedad para fines comerciales.**

C.

Para arribar a la anterior conclusión, -- la que se deriva de un análisis integral de todas las disposiciones legales que gobiernan el asunto bajo estudio, así como de su jurisprudencia interpretativa --, entendemos correcto

acudir, en primera instancia, a lo dispuesto en la Ley Núm. 272-2003, también conocida como la *Ley del impuesto sobre el canon por ocupación de habitación del Estado Libre Asociado de Puerto Rico*, 13 LPRA sec. 2271 nota *et seq.* (en adelante, "Ley Núm. 272-2003"). Ello, en aras de obtener una definición adecuada de la figura del alquiler a corto plazo, ante el silencio que guarda el Código Civil de 2020 al respecto.

Recordemos que, dicho estatuto, -- considerado una ley especial que guarda estrecha relación con el tema bajo estudio --, se aprobó con la finalidad de transferir, del Departamento de Hacienda de Puerto Rico a la Compañía de Turismo, las responsabilidades y obligaciones de imponer, fijar, determinar, tasar, recaudar, fiscalizar y distribuir el impuesto sobre el canon por ocupación de habitación correspondiente a toda hospedería, según definida por esta ley. Exposición de motivos, Ley Núm. 272-2003, *supra*. De igual forma, la precitada disposición estableció una nueva fórmula para la distribución de los recaudos por concepto del referido impuesto. *Íd.*

En lo pertinente a la controversia ante nuestra consideración, la Ley Núm. 272-2003, *infra*, define el **impuesto sobre el canon por ocupación** como la tarifa que le será facturada a un ocupante o a un huésped por un hostelero, por razón de la ocupación de cualquier habitación de una hospedería, valorado en términos de dinero. Art. 2(8), 13 LPRA sec. 2271. Asimismo, el estatuto define el término de **hospedería** de la siguiente forma:

> [C]ualquier instalación o edificio amueblado, regularmente usado y mantenido abierto para el alojamiento de huéspedes mediante el pago de un canon de alquiler, que derive sus ingresos del alquiler o arrendamiento de habitaciones, y que dentro de sus ofrecimientos provea tarifas de alquiler o arrendamiento computadas en forma diaria, semanal, fraccional, o mediante un canon global por concepto de todo incluido. El término Hospedería también incluirá hoteles, condohoteles, hoteles todo incluido, moteles, Paradores, casas de huéspedes, **Alojamiento Suplementario a Corto Plazo (short term rentals)**, pequeñas hospederías, casas de hospedaje, hoteles de apartamentos y facilidades recreativas operadas por agencias o instrumentalidades del Gobierno de Puerto Rico. (Énfasis suplido). Art. 2(24), 13 LPRA sec. 2271.

Es decir, para que cierto servicio o lugar de alojamiento se considere una hospedería, de conformidad con la normativa antes expuesta, debe cumplir con los siguientes requisitos: (1) consistir en una instalación o edificio amueblado, la cual sea regularmente usada y esté disponible para el alojamiento de personas a cambio de un canon de alquiler; (2) que derive sus ingresos del mismo alquiler o arrendamiento de habitaciones; y (3) que, dentro de sus ofrecimientos, provea tarifas de alquiler o arrendamiento computadas en forma diaria, semanal, fraccional o mediante un canon global por concepto de todo incluido. **El término hospedería también incluye los alojamientos suplementarios a corto plazo (en inglés, *short term rentals*).**

En esa dirección, la Ley Núm. 272-2003, *infra*, define el concepto de **alojamiento suplementario a corto plazo** como:

> [C]ualquier instalación, edificio o parte de un edificio, dado en alquiler por un periodo de tiempo menor a noventa (90) días, dedicado al alojamiento de personas mediante paga, cuya instalación, edificio o parte del mismo no sea un hotel,

condohotel, hotel todo incluido, motel, [p]arador, pequeña hospedería, casa de hospedaje y/o hotel de apartamentos. Dicho término incluirá, sin limitarse a, cualquier tipo de propuesta de alojamiento alternativo como casas, apartamentos, cabañas, villas, casas rodantes (móviles), flotantes, botes, entre otros conceptos de arrendamientos por un término menor de noventa (90) días. Art. 2(2), 13 LPRA sec. 2271.

**Como se puede apreciar, -- y en lo que consideramos la definición más completa de la figura jurídica aquí bajo estudio --, según lo dispuesto en la Ley Núm. 272-2003, _infra_, un alojamiento suplementario a corto plazo tiene tres características principales: (1) se constituye por un periodo de tiempo menor a noventa (90) días; (2) tiene la finalidad de alojar personas a cambio de que éstas paguen por dicho servicio; y (3) sus instalaciones no son las de un hotel, condohotel, motel, parador, pequeña hospedería, casa de hospedaje y/o hotel de apartamentos.**

Similar definición se desprende del _Reglamento de hospederías de Puerto Rico de la Compañía de Turismo,_ Reglamento Núm. 8856 de 22 de noviembre de 2016 (en adelante, "Reglamento de hospederías").[2] Éste define el término de **alojamiento suplementario a corto plazo** de la siguiente forma:

Consiste del alquiler a corto plazo, de cualquier tipo de estructura, habitación, casa o apartamento que por su naturaleza resulta conveniente o de importancia al desarrollo turístico. Operará exclusivamente con fines turísticos, para el alojamiento de huéspedes, mediante paga por un periodo igual o menor a noventa (90) días. Cumplirá con todos los requisitos de registro,

_____

[2] Disponible en: https://tourism.pr.gov/wp-content/uploads/2019/06 /Reglamento-de-Hospederi%CC%81as-Aprobado-22-de-noviembre-de-2016-1.pdf.

> licencias y número de hostelero, requerido por la
> Compañía [de Turismo]. Contará con un mínimo de
> una (1) unidad hasta un máximo de seis (6)
> unidades. Será el propósito de esta categoría
> reglamentar todo tipo de alojamiento a corto plazo
> disponible a turistas **para lograr mejor calidad
> del producto turístico suplementario o
> alternativo, no tradicional.** El operador estará
> disponible para proveer o coordinar un servicio
> limitado al huésped, según sea solicitado y a
> costo adicional por parte del huésped. (Énfasis
> suplido). Art. 5(E), pág. 4.

Por otra parte, cabe señalar que el Art. 24 de la Ley Núm. 272-2003, *infra*, dispone el porcentaje que se habrá de imponer, cobrar y recaudar por concepto del impuesto sobre el canon por ocupación de habitación. 13 LPRA sec. 2271o. Dicho porcentaje dependerá del tipo de hospedería. *Íd.* En el caso del alojamiento supletorio a corto plazo, se dicta que la Oficina de Turismo impondrá, cobrará y recaudará el referido impuesto a razón de un siete por ciento (7%). Art. 24(B), 13 LPRA sec. 2271o.[3]

_____

[3] En cuanto a los actores del proceso de recaudo del impuesto sobre el canon por ocupación, -- y en lo pertinente --, la Ley Núm. 272-2003 identifica al hostelero, al contribuyente y al intermediario. En particular, el término **hostelero** incluye cualquier persona natural o jurídica que opere una hospedería en Puerto Rico, incluyendo, pero sin limitarse a, el dueño, agente, propietario, operador, arrendatario, subarrendatario hipotecario, tenedor de los mismos, proveedores, intermediarios, dueños, u operadores de propiedades que se utilicen como alojamientos suplementarios a corto plazo. Art. 2(23), 13 LPRA sec. 2271. Asimismo, se define **contribuyente** como el hostelero que posee la obligación de cobrar, retener y pagar el impuesto sobre el canon por ocupación. Art. 2(15), 13 LPRA sec. 2271.

Por último, el estatuto define el término de **intermediario** como:

> [C]ualquier persona natural o jurídica que[,] por cualquier medio, incluyendo el internet o cualquier aplicación tecnológica, ofrezca o facilite la ocupación entre huéspedes y proveedores, dueños, u operadores de propiedades que se utilicen como Alojamientos Suplementarios a Corto Plazo (short term rentals), aunque dicho intermediario no opere, directa o indirectamente, tal propiedad utilizada como Alojamiento Suplementario a Corto Plazo (short term rental). Incluye, además, a personas naturales o jurídicas que promuevan o vendan ofertas, especiales, paquetes de estadías o programas de descuentos para estadías en Hospederías por

En fin, luego de un cuidadoso y detallado análisis de la Ley Núm. 272-2003, *infra*, son varias las conclusiones a las que podemos llegar, las cuales sirven de guía para la correcta disposición de la controversia ante nuestra consideración. Primeramente, notemos el hecho de que los alquileres a corto plazo son regulados de forma directa por legislación y reglamentación asociada a la actividad económica del turismo. Precisa también considerar que la ley, hasta cierta medida, equipara este tipo de alojamiento con las demás hospederías tradicionales, como los hoteles, al requerir el pago del impuesto sobre el canon por ocupación.

De hecho, se reconoce este tipo de alquiler como un producto alternativo o no tradicional, **pero turístico**. Ese trato distinto en cuanto a regulación, -- en comparación con aquel dado a los alquileres a largo plazo --, confirma, de entrada, su disparidad con el uso residencial de una propiedad.

Asimismo, lo anterior también nos sugiere que el interés jurídico evidente y principal de este producto es generar ingresos. P. Cabán Vales, G.S. Rivera Carrasquillo, A.S. Vélez Rivera, *AirBnB, Inscripción Automática y Responsabilidad Vicaria: Jurisprudencia reciente sobre*

---

cualquier medio incluyendo, pero sin limitarse a, internet o cualquier aplicación tecnológica. Art. 2(27), 13 LPRA sec. 2271.

Veamos, pues, que el término **intermediario** abarca plataformas digitales o páginas webs tales como *AirBnB*, *Booking.com*, *Homestay*, *Vrbo*, entre otras. Cabe destacar que la ley obliga a los intermediarios a recaudar, retener y remitir a la Oficina de Turismo el mencionado impuesto. Art. 27(A), 13 LPRA sec. 2271r.

*Derecho Civil*, 57 (Núm. 3) Rev. Jur. UIPR 389, 402 (2022-2023). Esto, mientras que la actividad residencial tiene como finalidad "la preservación del descanso, la tranquilidad y la seguridad de quienes residen en la comunidad". *Íd.* pág. 403.

D.

Sobre esto último, precisa repasar lo resuelto por este Tribunal, hace un tiempo atrás, en *Consejo de Titulares del Condominio Condesa del Mar v. Chamah Martínez*, 202 DPR 173 (2019) (Sentencia). En esa ocasión, veníamos llamados a determinar la compatibilidad de los alquileres a corto plazo con el uso residencial al que estaba destinado un bien inmueble sujeto al régimen de Propiedad Horizontal.

En extrema síntesis, dicho pleito inició cuando el Consejo de Titulares (en adelante, "Consejo") del condominio en cuestión presentó ante el Tribunal de Primera Instancia una *Petición de sentencia declaratoria, interdicto preliminar y permanente* en contra del Sr. Eduardo Chamah Martínez (en adelante, "señor Chamah Martínez"), titular de uno de los apartamentos. En dicha petición, el Consejo solicitó que se le ordenara al señor Chamah Martínez que cesara y desistiera de alquilar su unidad en calidad de hospedería, pues, a su entender, esa explotación comercial violaba las disposiciones contenidas en la escritura matriz y el reglamento constitutivo del régimen de Propiedad Horizontal.

Eventualmente, el caso fue desestimado pues, para una mayoría de nosotros, cambios fácticos tornaron la controversia académica. Ahora bien, nos parece pertinente rescatar y reiterar, en este momento, algunos aspectos de la *Opinión disidente* emitida por la Jueza Asociada señora Rodríguez Rodríguez, quien en esa ocasión entendió que el curso de acción apropiado para disponer del caso que el Tribunal tenía ante sí era atender la controversia en los méritos y resolver que el alquiler a corto plazo constituía un uso comercial del inmueble sujeto al régimen de Propiedad Horizontal. *Íd.* págs. 181-214.

Para llegar a la anterior conclusión, la Jueza Asociada señora Rodríguez Rodríguez, luego de hacer referencia a lo resuelto por esta Curia en *Soto Vázquez v. Vázquez Torres*, 138 DPR 282 (1995) y *Residentes Parkville v. Díaz*, *supra*, resaltó que, a diferencia de una persona que arrienda a largo plazo, aquella que arrienda a corto plazo no tiene el propósito de establecerse y residir en la propiedad; más bien, su finalidad es "pernoctar de manera transitoria". *Consejo de Titulares del Condominio Condesa del Mar v. Chamah Martínez*, *supra*, pág. 205. De conformidad con lo anterior, razonó que no era posible distinguir entre este tipo de arrendatarios y los huéspedes de hoteles, puesto que ambos realizan las mismas actividades, y sus estadías se caracterizan por la misma temporalidad y transitoriedad. *Íd.*

**Además, la Jueza Asociada enfatizó que los alquileres a corto plazo constituyen un negocio jurídico con fines**

**eminentemente comerciales, lo cual implica un uso lejano y distinto al residencial.** *Íd.* pág. 205. Asimismo, puntualizó que el uso de una residencia para fines comerciales afecta la seguridad, sana convivencia y sentido de comunidad que debe imperar en estos espacios. *Íd.* pág. 208.

A su juicio, la entrada y salida de personas extrañas a la comunidad tiene efectos sobre el uso y desuso de los elementos comunes, y atenta contra la seguridad de los residentes. *Íd.* Señaló también que la privacidad y la intimidad de los vecinos podrían verse afectadas por el flujo constante de huéspedes desconocidos. *Íd.*

**En fin, la Jueza Asociada señora Rodríguez Rodríguez concluyó que la designación expresa de uso residencial, tanto en la escritura matriz como en el Reglamento del condominio en cuestión, conllevaba necesariamente la exclusión de los alquileres a corto plazo, pues estos suponen una explotación comercial incompatible con dicho uso y tienen repercusiones sobre el régimen, su administración, y la intimidad, seguridad y derecho propietario de los titulares.** *Íd.* pág. 213.

E.

Los señalamientos realizados por la Jueza Asociada señora Rodríguez Rodríguez en *Titulares del Condominio Condesa del Mar v. Chamah Martínez*, *supra*, no surgen de meras conjeturas. Por el contrario, estos coinciden con los hallazgos de estudios relacionados al impacto de los alquileres a corto plazo. Sobre esto, y en el contexto de

Puerto Rico, nos parece importante reseñar brevemente algunos datos del informe de la *Hispanic Federation – Puerto Rico* titulado *Propuestas para reducir el impacto de los arrendamientos de corto plazo en el desplazamiento de comunidades*.[4]

En primer lugar, el informe enfatiza que, al igual que ocurre a nivel internacional, el fenómeno de los alquileres a corto plazo en Puerto Rico va en incremento. Específicamente, se detalla que, para el 2022, la cantidad de propiedades de alquiler a corto plazo en el archipiélago era de 17,000.[5] Esto, en comparación a 1,000 unidades que existían para el 2014.[6]

De igual forma, en el 2022 se registraban mensualmente entre 100 y 400 unidades nuevas,[7] con la finalidad de ofrecer este tipo de alojamiento temporero, para un total de 17,000

---

[4] M.E. Rosa Rosa, L.N. Rodríguez Del Valle y A. Cotté Morales, *Informe: propuestas para reducir el impacto de los arrendamientos de corto plazo en el desplazamiento de comunidades* (julio 2023), disponible en https://aldia.microjuris.com/wp-content/uploads/2024/02/INFORME_Arrendamientos-de-Corto-Plazo_v3-1.pdf.

[5] *Íd.* pág. 8.

[6] *Íd.*

[7] *Íd.* Al momento de realizarse el estudio, las áreas de mayor concentración de alquileres a corto plazo fueron el oeste, especialmente los municipios de Rincón y Cabo Rojo, el área noreste y las islas municipio de Vieques y Culebra.

Cabe destacar también que, para el 2022, municipios como San Juan, Cataño y Aguadilla, contaban con sectores específicos donde más de la mitad de las propiedades eran alquileres a corto plazo. De igual forma, en algunos sectores de municipios como Culebra, Vieques, Dorado, Luquillo, Río Grande, Rincón y Arecibo este tipo de propiedades alcanzaba un 30%. Véase, S. Minelli Pérez, "Sin freno el crecimiento de los alquileres a corto plazo", en *Negocios*, El Nuevo Día, 9 de noviembre de 2022, disponible en https://www.elnuevodia.com/negocios/turismo/notas/sin-freno-el-crecimiento-de-los-alquileres-a-corto-plazo/.

propiedades.[8] Para 2023, dicha cantidad era de aproximadamente 25,000.[9]

En segundo lugar, la investigación realizada evidenció que este tipo de alquileres sí puede acarrear beneficios para la comunidad. A modo de ejemplo, los mismos fomentan la creación de empleos a nivel local, especialmente empleos relacionados a la limpieza y administración de las propiedades.[10] De igual forma, incentivan la actividad económica del área y, consecuentemente, incrementan el flujo de personas en ésta.[11]

Sin embargo, los beneficios aludidos fueron opacados por los impactos negativos identificados.[12] En lo pertinente, se demostró que la utilización con fines turísticos o comerciales de propiedades residenciales afecta la seguridad, tranquilidad y el sentido de comunidad de las personas que allí habitan.[13] En particular, se destacó el comportamiento irrespetuoso que algunas personas huéspedes tienen para con las personas residentes de la comunidad.[14] De igual forma, se evidenció el incremento de situaciones de

---

[8] "Ya hay sobre 25 mil unidades de vivienda en Puerto Rico como alquileres de corto plazo", en *Locales*, Metro, 29 de enero de 2024, disponible en https://www.metro.pr/noticias/2024/01/29/ya-hay-sobre-25-mil-unidades-de-vivienda-en-puerto-rico-como-alquileres-de-corto-plazo/.

[9] *Íd.*

[10] *Informe: propuestas para reducir el impacto de los arrendamientos de corto plazo en el desplazamiento de comunidades*, *supra* esc. 4, pág. 16.

[11] *Íd.*

[12] *Íd.* págs. 17-18.

[13] *Íd.* pág. 18.

[14] *Íd.*

ruido excesivo, fiestas y uso desconsiderado de los espacios comunes.[15]

Asimismo, se encontró que, en la mayoría de los casos, los dueños o propietarios de los inmuebles destinados a este tipo de alquileres suelen ser personas ausentes; es decir, personas que no residen en las referidas propiedades ni siquiera de tiempo en tiempo, ni en el área limítrofe.[16] Específicamente, se encontró que estos suelen ser puertorriqueños que residen en otro lugar del archipiélago o en la diáspora, y/o corporaciones e inversionistas extranjeros.[17]

**Por último, es importante destacar que, a raíz de la investigación realizada, la *Hispanic Federation - Puerto Rico* recomienda catalogar los alquileres a corto plazo como negocios.[18]** Conforme a lo anterior, sugiere requerir licencias, patentes, permisos, entre otros requisitos, a las personas que constituyan este tipo de alquileres.[19]

III.

Dicho ello, y para finalizar, -- a modo ilustrativo --, nos resulta persuasivo repasar dos decisiones recientemente

---

[15] *Íd.*

[16] *Íd.*

[17] *Íd.*

[18] *Íd.* pág. 19.

[19] *Íd.* A modo de ejemplo, el municipio de San Juan requiere una licencia expedida por la Oficina de Permisos para toda aquella persona que interese constituir u operar un alquiler a corto plazo dentro de la jurisdicción y extensión territorial de dicho municipio. Art. 7.006, *Ordenanza Municipal del municipio de San Juan Núm. 39 (Serie 2022-2023)*, disponible en https://sanjuan.pr/wp-content/uploads/2023/05/ordenanza-39.pdf.

emitidas por el Tribunal Supremo de España, Sala de lo Civil, sobre el carácter comercial o turístico de los alquileres a corto plazo. Cabe destacar que éstas, a diferencia del caso ante nuestra consideración, surgen en el contexto del régimen de Propiedad Horizontal.

Primeramente, en la STS 5197/2023 de 27 de noviembre,[20] la comunidad de propietarios de cierto edificio interpuso una *Demanda* contra una propietaria y una arrendataria, con el propósito de que éstas cesaran la "actividad de alquiler turístico o vivienda de uso turístico" que desarrollaban en dos inmuebles.[21] *Íd.* pág. 2. Ambas propiedades habían sido inscritas en el *Registro de actividades turísticas del principado de Asturias* como alojamientos turísticos, en contravención a la posición de la comunidad de vecinos.

Las demandadas, por su parte, adujeron que la dedicación de las viviendas a uso turístico o vacacional no contravenía los mencionados estatutos. Ello, puesto que, a su entender, no se variaba en sí el uso residencial de la propiedad.

Tanto el foro de instancia, como el foro apelativo intermedio español favorecieron la posición de las demandadas. Según su análisis, destinar las viviendas a fines

---

[20] Disponible en https://www.poderjudicial.es/search/TS/openDocument/ec749580e23d9620a0a8778d75e36f0d/20231215.

[21] En específico, la comunidad de vecinos alegó que el alquiler de los apartamentos, destinados a uso turístico, vulneraba el Art. 31 de los Estatutos Sociales del inmueble, el cual disponía lo siguiente: "En los departamentos independientes del edificio -viviendas- a los que se accede por el portal uno […] no podrán ejercerse actividades profesionales, empresariales, mercantiles o comerciales de ningún tipo; reservándose su uso al de carácter exclusivamente residencial". *Íd.* pág. 4.

vacacionales no constituía una variación al uso residencial de las mismas.

**Inconforme con las determinaciones de los foros a quo, la comunidad de vecinos acudió al Tribunal Supremo. Éste último revocó las decisiones de los foros inferiores al concluir que la actividad desplegada por las demandadas era de naturaleza empresarial y comercial.**

El Tribunal Supremo reiteró, primero, que, en el contexto de Propiedad Horizontal, es posible establecer limitaciones o prohibiciones que atiendan al interés general de la comunidad, incluyendo aquellas relacionadas a la alteración del uso del inmueble. No obstante, éstas, para que sean eficaces, deben constar de manera expresa.

**Aclarado lo anterior, el Tribunal Supremo explicó que el alquiler de los apartamentos de uso turístico consistía en poner a disposición material los inmuebles para su utilización por terceras personas, -- mediante el pago de un precio --, con el propósito de cubrir su necesidad de alojamiento transitorio. Señaló, además, que la actividad en cuestión era prestada por una "sociedad mercantil con ánimo de lucro, que actua[ba] en el tráfico jurídico para su explotación, la cual voluntariamente se sometió al régimen jurídico del Decreto 48/2016, de 10 de agosto, de viviendas vacacionales y viviendas de uso turístico de Asturias, al tener su propietaria inscritos los pisos litigiosos como viviendas de uso turístico".** *Íd.* pág. 7.

Sobre esto último, destacó que someterse a tal decreto conllevaba el cumplimiento con determinados requisitos relacionados a la comercialización de los apartamentos,[22] lo cual implicaba que la actividad en cuestión no se desarrollaba meramente fuera de los inmuebles, sino que también en su interior. **Así pues, sostuvo que, si bien las propiedades estaban destinadas a un uso residencial, también se efectuaba en éstas actividad empresarial.**

Por otra parte, en la STS 5199/2023 29 noviembre,[23] la controversia a resolver era si el uso de un apartamento para arrendamientos a corto plazo, alquiler vacacional o fines turísticos estaba comprendido en una cláusula de las Normas de Comunidad del complejo en cuestión que prohibía la realización de actividad económica alguna, salvo que la propia subcomunidad lo autorizara por unanimidad previa consulta de algún interesado. En específico, la cláusula disponía lo siguiente: "Queda terminantemente prohibido la realización de actividad económica alguna en las viviendas (oficina, despacho, consulta, clínica, etc., ...) salvo que la propia subcomunidad de portal lo autorice por unanimidad previa consulta obligatoria de algún interesado". *Íd.* pág. 5.

---

[22] A modo de ejemplo, menciona el foro español que se requiere: (1) garantizar la reposición de enseres necesarios; (2) la publicación del número correspondiente de inscripción en el Registro de Empresas y Actividades Turísticas; (3) la publicación de los precios del servicio de alojamiento; (4) cumplir con obligaciones de mantenimiento, entre otros requisitos. *Íd.*, pág. 7.

[23] Disponible en https://www.poderjudicial.es/search/openDocument/15a4b60c68578802a0a8778d75e36f0d/20231214.

En síntesis, varios propietarios presentaron una *Demanda* en contra de la comunidad de propietarios (en adelante, "Comunidad") para solicitar que se declarara que la prohibición contenida en las Normas de Comunidad no incluía el uso y destino de las viviendas al arrendamiento de corto plazo, alquiler vacacional o apartamento turístico. La Comunidad, por su parte, se opuso, alegando que el alojamiento de tipo turístico, en efecto, era una actividad económica y la modalidad de apartamento turístico una actividad turística.

Los foros inferiores desestimaron el recurso. A su juicio, el uso de las viviendas como apartamentos turísticos es una actividad económica y, por lo tanto, prohibida por las Normas de Comunidad del complejo objeto del litigio. Señalaron, además, que la enumeración de actividades en dicha normativa tenía un mero carácter ejemplificativo.

Evaluados los hechos ante su consideración, el Tribunal Supremo destacó que la interpretación otorgada por los foros inferiores era conforme a la jurisprudencia respecto a que las limitaciones a la propiedad tienen que ser claras, precisas y expresas. A su entender, la inclusión de las actividades turísticas en la prohibición en cuestión era perfectamente coherente con la letra y espíritu de ésta, pues lo que se buscaba vedar era el ejercicio de actividad económica con un carácter comercial, profesional o empresarial, como es el caso de los apartamentos turísticos.

**Además, dicho foro señaló que no podía prevalecer la posición de los demandantes respecto a equiparar el arrendamiento de vivienda para uso turístico con el arrendamiento de vivienda habitual. En ese sentido, explicó que el arrendamiento de vivienda es aquel que recae sobre una edificación habitable cuyo destino principal es satisfacer la necesidad permanente de vivienda del arrendatario. Esto, a diferencia del arrendamiento de vivienda para uso turístico, dirigido a proporcionar alojamiento temporal sin constituir un cambio de residencia para la persona alojada.**

En fin, de estas decisiones a las que hemos hecho referencia podemos notar, primero, el reiterado nexo entre el concepto de *residencia* -- o *vivienda* -- con el de *permanencia*, y entre el concepto de *uso comercial* o *uso turístico* con el de *transitoriedad*. En segundo lugar, observemos la importancia que tiene, para fines de catalogar la actividad de alquilar a corto plazo como un uso comercial o turístico de la propiedad, aspectos tales como su finalidad (el lucro económico) y el cumplimiento con requisitos relacionados a la comercialización del inmueble (por ejemplo, la publicación de los precios a pagar por el servicio de alojamiento).

Es, pues, a la luz de la normativa antes expuesta, que procedemos, -- desde la disidencia --, a disponer de la controversia ante nuestra consideración.

IV.

Como mencionamos anteriormente, en el presente caso, la Asociación plantea que, de conformidad con la *Escritura de servidumbres en equidad* de la urbanización, ésta tiene la facultad de salvaguardar la seguridad, paz y convivencia de la comunidad. Toda vez que los alquileres a corto plazo se han convertido en un problema de seguridad, argumenta que su acción de enmendar el Código Comunitario para específicamente prohibir dicha práctica fue válida. **Asimismo, arguye que los alquileres a corto plazo equivalen a un uso comercial de las villas, prohibido por la cláusula de la mencionada escritura que limita el uso de éstas a uno residencial.** A nuestro juicio, le asiste la razón.

Y es que, de conformidad con la normativa antes expuesta, no albergamos duda de que los alquileres a corto plazo constituyen un uso comercial de la propiedad. Por consiguiente, su implementación modifica el carácter residencial de un inmueble. Como expusimos anteriormente, son varias las razones que nos mueven a llegar a esta conclusión.

Primero, los alquileres a corto plazo no cumplen con el sentido de permanencia asociado al uso residencial de una propiedad. Por el contrario, este tipo de alquiler se caracteriza por su transitoriedad, pues la persona huésped no busca establecerse en dicho lugar.

De igual forma, no cabe argumentar que los inmuebles sujetos a esta actividad constituyen la residencia de los

propietarios, pues, según mencionado antes, la mayoría de estos no reside, -- ni siquiera de forma temporera --, en dichas propiedades. Para estos propietarios, los inmuebles en cuestión representan una mera fuente de ingresos.

Segundo, los alquileres a corto plazo atentan contra elementos esenciales asociados al concepto de residencia; en otras palabras, este tipo de alquiler lacera características fundamentales que se espera tenga una residencia. Entre dichas características o elementos está la tranquilidad, la seguridad y el sentido de comunidad.

Tercero, y último, en Puerto Rico, este tipo de alquileres se trata como un producto turístico, cuya finalidad es la explotación económica. Al igual que los hoteles, condohoteles, moteles, paradores y casas de huéspedes, las personas que alquilan este tipo de propiedad pagan determinada suma de dinero a cambio del alojamiento temporero que se les ofrece. De conformidad con ello, el hostelero y/o el intermediario viene obligado a recaudar, retener y remitir a la Oficina de Turismo el mencionado impuesto por ocupación de habitación.

Siendo ello así, somos del criterio, y es nuestra conclusión, que la Asociación no erró al determinar que los alquileres a corto plazo constituyen un uso comercial de la propiedad. Tampoco falló al enmendar el Código Comunitario para prohibir los mismos.

V.

Por no ser ésta la posición de una mayoría de esta Curia, respetuosamente disentimos.


Ángel Colón Pérez
Juez Asociado