Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| **SENDER SHUB**<br><br>Apelante<br><br><br>v.<br><br><br>**NELSON MENDA**<br><br>Apelado | KLAN202400472 | ***APELACIÓN*** procedente del Tribunal de Primera Instancia Sala Superior de **San Juan**<br><br>Caso Número: ***SJ2023CV10299 (903)***<br><br>Sobre: **Nombramiento de Árbitro sustituto de conformidad a la Ley de Arbitraje Comercial de Puerto Rico** |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, la Juez Grana Martínez y el Juez Pérez Ocasio

Pérez Ocasio, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 15 de octubre de 2024.

Comparece ante nos Sender Shub, en adelante Shub o el apelante, mediante Recurso de Apelación para solicitarnos la Revisión de una *Sentencia* del 12 de abril de 2024 emitida por el Tribunal de Primera Instancia en San Juan, en adelante TPI-SJ. En esta, el TPI-SJ desestimó la demanda que instó el apelante contra Nelson Menda, en adelante Menda o el apelado, sobre la impugnación y selección de un Árbitro Sustituto como parte de un Acuerdo de Separación.

Examinado el recurso presentado y el derecho aplicable, *confirmamos la Sentencia* del 12 de abril de 2024.

**I.**

Los hechos que nos ocupan para la resolución de este pleito son los siguientes.

Número Identificador

SEN2024 _____

Durante más de 30 años, Shub y Menda fueron socios de varias empresas de mucho éxito, incluyendo algunas involucradas en este pleito. Eventualmente, estos decidieron terminar con su relación comercial y de negocios, por lo que el 5 de julio de 2018 realizaron un *Agreement to Terminate Partnership* o Acuerdo de Separación, en español.[1] Como parte de este Acuerdo de Separación se distribuyeron las distintas corporaciones. La mayoría de las corporaciones fueron repartidas entre las partes y otras se adjudicaron en partes iguales para ambos.

En cuanto a Menda, le fueron adjudicadas *Me Salvé, Inc.* y *Admincomp, LLC., Star Warehousing LLC*, entre otras.[2] A Shub, le fueron adjudicadas *GIB Development LLC, Caribbean City Builders Inc.*, entre otras.[3] Mientras que *Comercial Business Consulting* (CBC) y *Puerto Rico First in Time*, etc., permanecieron en partes iguales entre Menda y Shub.[4] Como parte de este acuerdo, las partes se vincularon a que, en caso de conflicto con relación al mismo, se atenderían las controversias mediante *arbitraje*.[5] Así, en la cláusula Núm. 34, inicialmente, se nombró al suegro de ambos, Miguel Lazoff, en adelante Lazoff, como árbitro de las disputas relacionadas al Acuerdo de Separación.[6]

Mediante la Cláusula Núm. 34 del Acuerdo de Separación de 2018, se nombró árbitro sustituto a Jim Taubenfeld, esto en caso de que Lazoff estuviera indispuesto o *unavailable*.[7] Eventualmente, las circunstancias bajo las que se emitió la Cláusula Núm. 34 cambiaron, de manera que, mediante *un laudo rendido por Lazoff,*[8] el 30 de noviembre de 2022, se modificó para, entre otras cosas,

---

[1] Apéndice Recurso de Apelación, págs. 76-90.
[2] *Id.*
[3] *Id.*
[4] *Id.*
[5] *Id.* pág. 90
[6] *Id.*
[7] *Id.*
[8] *Id.* págs. 91-92.

eliminar a Taubenfeld como árbitro alterno, por este estar -alegadamente- parcializado a favor de Menda.[9] Taubenfeld se había convertido en el presidente de Me Salvé y abogado de Menda.

Así las cosas, el 25 de agosto de 2023, Shub activó la Cláusula de Arbitraje del Acuerdo de Separación y notificó a Lazoff, como Árbitro #1, y a Menda como parte en conflicto. Esto, a raíz de que Menda no le reconociera derechos de titularidad a Shub sobre *Comercial Business Consulting* (CBC).[10] Como consecuencia de lo anterior, el 30 de agosto de ese mismo año, Menda solicitó la inhibición de Lazoff, en busca de la activación de Taubenfeld, socio de Menda, como árbitro sustituto.[11] Sin embargo, Lazoff emitió órdenes y citaciones a vista para resolver el arbitraje y la solicitud de inhibición. El 15 de octubre de 2023 el árbitro seleccionado Lazoff, suegro de Shub y Menda, falleció. Tras la muerte de Lazoff, surge una nueva polémica entre las partes sobre la aplicación de la Cláusula de Sustitución del Árbitro. Menda y Shub se encuentran en un litigio separado al Recurso que hoy nos ocupa, ambos en el TPI-SJ, en el cual Menda impugna la validez del laudo de Lazoff sobre la Cláusula Núm. 34 en cuanto a la sustitución del árbitro.[12]

Por su parte, el 1 de noviembre de 2023, Shub presentó demanda contra Menda. En dicha demanda solicita *(1) la sustitución de árbitro al amparo de la Cláusula Núm. 34 del Acuerdo de Separación, según enmendada por el laudo emitido por Lazoff el 30 de noviembre de 2022 y; (2) que se emita una Sentencia Declaratoria descualificando al árbitro Taubenfeld como árbitro sustituto.*[13]

Por su parte, el 15 de diciembre de 2023, Menda presentó un escrito titulado *Solicitud de Desestimación*. En esta, básicamente

---

[9] Apéndice Recurso de Apelación, págs. 66-75.
[10] *Id.* pág. 3.
[11] *Id.* págs. 44-58.
[12] Véase el caso Civil Núm. *SJ2023CV01129*, este caso permanece activo en el Tribunal de Primera Instancia en San Juan.
[13] Apéndice Recurso de Apelación, págs. 66-75.

argumentó que debía desestimarse porque las reclamaciones dependen del resultado de un caso que les antecede y se encuentra pendiente en otra sala del Tribunal de Primera Instancia en San Juan, titulado *Menda v. Shub et al., Civil Núm. SJ2023CV01129.*[14]

Luego de varios escritos y trámites procesales que no son necesarios pormenorizar, el 11 de abril de 2024, el TPI-SJ celebró vista argumentativa para disponer de las distintas solicitudes presentadas por ambas partes.[15] Menda sostuvo su defensa en que el caso aquí en litigio estaba vinculado al caso que antecede, e incluso, que de prevalecer Shub en el otro caso, este se tornaría académico. Shub sostuvo que en el caso ante nos, no estaba levantando la validez del laudo que se impugna, sino que, al amparo de los Artículos 5 y 6 de la Ley de Arbitraje Comercial de Puerto Rico, solicitaba la designación de un árbitro para continuar con el arbitraje actual entre el Sr. Menda y el Sr. Shub.[16] Por lo tanto, Shub razonó que este caso no está vinculado al que le antecede, Caso Civil Núm. *SJ2023CV01129.*

Tras escuchar ambas partes, el TPI-SJ el 12 de abril de 2024 determinó "*Ha Lugar*" la *Solicitud de Desestimación* de Menda. El Tribunal adujo que, conforme a la Regla 201 de Evidencia de 2009, 32 LPRA Ap. VI, R. 201, podía tomar conocimiento judicial del expediente judicial del caso Civil Núm. *SJ2023CV01129.* De esta manera, determinó que procedía la desestimación, toda vez que, la causa de acción solicitada en este pleito estaba vinculada a la Cláusula Núm. 34 del Acuerdo de Separación y el Laudo del 30 de noviembre de 2022, la cual se buscaba impugnar en el pleito que antecede. Del mismo modo, dispuso que, dependiendo el resultado del primer caso, si se encuentra válido el laudo, que excluye a

---

[14] Apéndice Recurso de Apelación, págs. 1-12.
[15] *Id.*
[16] *Id.*

Taubenfeld, la segunda causa de acción del presente caso, sobre Sentencia Declaratoria pudiera tornarse académica.

Inconforme con la Sentencia del 12 de abril de 2024 emitida por el TPI-SJ, Shub acude en *Recurso de Revisión* ante nos, el día 12 de mayo de 2024. En esta, expuso los siguientes señalamientos de error:

> **PRIMER ERROR:** ERRÓ EL TPI AL DESESTIMAR LA DEMANDA POR DEJAR DE EXPONER UNA RECLAMACIÓN QUE JUSTIFIQUE UN REMEDIO BAJO LA REGLA 10.2 (5) DE PROCEDIMIENTO CIVIL.
> **SEGUNDO ERROR:** ERRÓ EL TPI AL APARTARSE DE LAS ALEGACIONES DE LA DEMANDA AL RESOLVER UNA MOCIÓN DE DESESTIMACIÓN POR INSUFICIENCIA DE LAS ALEGACIONES BAJO LA REGLA 10.2 (5) DE PROCEDIMIENTO CIVIL.
> **TERCER ERROR:** ERRÓ EL TPI AL CONSIDERAR Y TOMAR COMO CIERTAS LAS ALEGACIONES DEL PROMOVENTE DE UNA MOCIÓN DE DESESTIMACIÓN VERTIDAS POR ESTE EN OTRO CASO.
> **CUARTO ERROR:** ERRÓ EL TPI AL, EN EFECTOS PRÁCTICOS, PARALIZAR LA DEMANDA.

El 11 de junio de 2024, la parte apelada, sometió su Alegato en Oposición a la Apelación. Con la comparecencia de ambas partes, procedemos a resolver.

## II.

### A. Apelación

Las Reglas de Procedimiento Civil se desenvuelven en un orden lógico, natural y armonioso entre sí. Este orden queda demostrado en las distintas etapas de un litigio (alegaciones, mociones, descubrimiento de prueba, vistas evidenciarias, sentencia, reconsideración, *apelación*) y sus efectos escalonados. Cada etapa se sirve de la anterior y se proyecta, entonces, para la próxima. *Vega v. Alicea*, 145 DPR 236, 238 (1998).

La etapa de la apelación se perfecciona con la presentación oportuna de un escrito conforme a las formalidades establecidas en nuestro estado de derecho, que incluye su debida notificación a las partes. El recurso de apelación es aquel "que se presenta ante el foro apelativo intermedio cuando se solicita la revisión de una sentencia,

o un dictamen final, emitido por el Tribunal de Primera Instancia". *González Pagán et al. v. SLG Moret-Brunet*, 202 DPR 1062, 1070-1071 (2019); Regla 52.1 y 52.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1 y R. 52.2. Véase R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil,* 6ta Ed., San Juan, Ed. Lexis Nexis, 2017, pág. 519.

La *apelación* no es un recurso discrecional como en los casos de *certiorari.* Una vez se cumpla con los requisitos jurisdiccionales y de perfeccionamiento del recurso, el Tribunal de Apelaciones viene obligado a atender el asunto y resolverlo en sus méritos, de forma fundamentada. *Soc. de Gananciales v. García Robles*, 142 DPR 241, 252 (1997). En ese sentido, reconocemos que existe el derecho estatutario para acudir en apelación ante el Tribunal de Apelaciones cuestionando toda sentencia final emitida por el Tribunal de Primera Instancia. *Silva Barreto v. Tejada Martell*, 199 DPR 311, 317 (2017).

Al revisar una determinación de un foro de menor jerarquía, los tribunales revisores tenemos la tarea principal de auscultar si se aplicó correctamente el derecho a los hechos particulares del caso. Como regla general, los foros apelativos no tenemos facultad para sustituir las determinaciones de hechos del tribunal de instancia con nuestras propias apreciaciones. *W.M.M., P.F.M., et al. v. Colegio et al.*, 211 DPR 871, 902-903 (2023); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770-771 (2013); *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007).

### B. Reglas Procedimiento Civil y el Ordenamiento Procesal

El ordenamiento procesal civil en Puerto Rico se basa en el principio de economía procesal, reconociendo la necesidad de resolver los litigios de manera justa, rápida y económica. Regla 1 de Procedimiento Civil, 32 LPRA Ap. V, R. 1. Así, recae sobre nuestros

tribunales el deber de garantizar la fluidez del litigio sin demoras innecesarias, enfocado en impartir la justicia de forma rápida y eficiente. *In re Pagani Padró,* 181 DPR 517, 529 (2011); *Heftler Const. Co. v. Tribunal Superior,* 103 DPR 844, 846 (1975). Sin embargo, este deber viene acompañado del compromiso de las partes a través del mínimo de diligencia. Es decir, que les corresponde a las partes colaborar con nuestros tribunales en la tramitación justa, rápida y económica. *Bco. Des. Eco. v. AMC Surgery,* 157 DPR 150, 157. (2002). Como consecuencia de esta Regla nuestro ordenamiento procesal civil no permite que dos tribunales atiendan simultáneamente dos casos que versen sobre la misma controversia que pudieran provocar resultados contradictorios. *Rivera Schatz v. ELA y C. Abo. PR I,* 191 DPR 470, 478 (2014); *AMPR et als. v. Sist. Retiro Maestros II,* 190 DPR 88, 89 (2014). Evitar la duplicidad de pleitos "**es un principio cardinal de nuestro derecho procesal**". *Consejo Titulares v. Gómez Estremera et al.,* 184 DPR 407, 434 (2012).

La Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, permite que una parte demandada en un pleito solicite la desestimación de la demanda presentada en su contra. *Rivera Candela et al. v. Universal Insurance Co.,* 2024 TSPR 99, 214 DPR ___ (2024); *Blassino Alvarado y otros v. Reyes Blassino et al.,* 2024 TSPR 93, 214 DPR ___ (2024); *González Méndez v. Acción Social et al.,* 196 DPR 213, 235 (2016); *Aut. Tierras v. Moreno & Ruiz Dev. Corp.,* 174 DPR 409, 428 (2008). Esta Regla dispone que una parte demandada presentará una moción fundamentada en: (1) la falta de jurisdicción sobre la materia; (2) la falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) *dejar de exponer una reclamación que justifique la concesión de un remedio* y; (6) dejar de

acumular una parte indispensable. 32 LPRA Ap. V, R. 10.2. (Énfasis nuestro).

Para que proceda una moción al amparo de la Regla 10.2, el Foro Primario deberá tomar como ciertos todos los hechos alegados en la demanda y considerarlos de la manera más favorable a la parte demandante. *Rivera Candela et al. v. Universal Insurance Co.,* supra; *Blassino Alvarado y otros v. Reyes Blassino et al.*, supra; *Costas Elena y otros v. Magic Sport y otros*, 2024 TSPR 13, 213 DPR___ (2024); *Eagle Security v. Efrón Dorado et al.*, 211 DPR 70, 84 (2023); *Bonnelly Sagrado et al. v. United Surety*, 207 DPR 715, 722 (2021); *Colón Rivera et al. v. ELA*, 189 DPR 1033, 1049 (2013); *El Día, Inc. v. Mun. de Guaynabo*, 187 DPR 811, 821 (2013). Es decir, al momento de evaluar una moción de desestimación, los tribunales deberán examinar los hechos alegados en la demanda de forma conjunta y de la forma más liberal posible a favor de la parte demandante. *Rivera Candela et al. v. Universal Insurance Co.,* supra; *Blassino Alvarado y otros v. Reyes Blassino et al.*, supra; *Morales Rivera y otros v. Asociación de Propietarios de la Urb. Dorado del Mar*, 2024 TSPR 61, 213 DPR___ (2024); *Cruz Pérez v. Roldán Rodríguez et. al.*, 206 DPR 261, 267 (2021); *López García v. López García*, 200 DPR 50, 69 (2018).

Bajo esta premisa, para que una moción de desestimación prospere, se tendrá que demostrar de forma certera que el demandante no tiene derecho a remedio alguno, que pudiere probar en apoyo a su reclamación. *Rivera Candela et al. v. Universal Insurance Co.,* supra; *Blassino Alvarado y otros v. Reyes Blassino et al.*, supra; *Bonnelly Sagrado et al. v. United Surety*, supra, pág. 722; *López García v. López García*, supra, pág. 70; *Dorante v. Wrangler of P.R.,* 145 DPR 408, pág. 414. Esta Regla 10.2(5), es de las de mayor complejidad en términos jurídicos, pues, una moción al amparo de esta, se fundamenta en que los hechos que alega la parte

demandante, aun presumiéndose ciertos, no son suficientes como base para que se les conceda un remedio.[17] Es decir, en efecto, procederá la desestimación si aun dando por cierto todos los hechos bien alegados del demandante, no se demuestra derecho a una reclamación. *Rivera Candela et al. v. Universal Insurance Co.,* supra; *Blassino Alvarado y otros v. Reyes Blassino et al.*, supra; *Trinidad Hernández et al. v. E.L.A. et al.*, 188 DPR 828, 848 (2013).

### C. Arbitraje

El surgimiento del *arbitraje* se da como un intento por alcanzar una solución de las controversias jurídicas de forma más pacífica y amigable que el proceso oficial con intervención del Estado. Sustituir el proceso público por uno privado con el fin de evitar el derecho oficial y conducirlo a la aplicación de un derecho considerado como más beneficioso para las partes. Aun cuando existe mucho antes que el derecho Romano, se le atribuye a este último el desarrollo y fortalecimiento de la figura.[18] En el Derecho Romano tenía el aspecto de contrato de compromiso, cuyo objeto era la controversia a resolver por los árbitros.[19] En el Derecho Canónico, por otro lado, surgió como transacción en la que el árbitro mediaba como conciliador, sin capacidad adjudicativa.[20] Esto fue así hasta la llegada del Código de las Siete Partidas en 1265, en donde se volvió a la concepción romana.[21]

En Puerto Rico, bajo la corona española, la figura del arbitraje se establecía como parte de los Códigos y Leyes de Enjuiciamientos Civiles. Bajo ese estado de derecho, la figura de arbitraje fue tratada

---

[17] Véase Aracelis Vidal Rivera & Laura C. Malavé, *El uso de la moción de desestimación y de la solicitud de sentencia sumaria ante el Tribunal de Primera Instancia*, 54 Rev. Der P.R. 245, 256 (2015).

[18] Pedro F. Silva Ruiz, *"El Arbitraje en Puerto Rico"*, Revista de Derecho Procesal, 2008-2, Rubinzal-Culzone, eds., Buenos Aires, Argentina, pp. 417-433.

[19] Tomás Ogayar Ayllón, *El Contrato de Compromiso y la Institución Arbitral,* Ed. Rev. Derecho Privado, Madrid, 1977, págs. 38-39.

[20] *Id.*

[21] Silva-Ruiz, op. cit.

y dividida como dos figuras sin unificación. Por un lado, como un contrato de transacción y, por otro, como un contrato de compromiso.[22] Así, teniendo su precedente del marco jurídico español, a mediados del Siglo XX se creó la Ley de Arbitraje Comercial en Puerto Rico, Ley Núm. 376 del 8 de mayo de 1951, 32 LPRA secs. 3201-3229.[23] Esta logró conciliar la figura del arbitraje, unificando el concepto de compromiso y transacción, haciéndolo un convenio escrito entre las partes válido, exigible, e irrevocable salvo por los fundamentos que existieran en derecho para la revocación de cualquier convenio. Art. 1, Ley de Arbitraje, supra, 32 LPRA sec. 3201.

Actualmente, en Puerto Rico el arbitraje es un proceso adjudicativo en el que un interventor neutral, denominado "árbitro", recibe la prueba presentada por las partes en conflicto y, a base de esta prueba, emite una decisión llamada Laudo.[24] Bajo nuestro ordenamiento jurídico, el arbitraje es una figura jurídica inherentemente contractual. *Aponte Valentín et al. v. Pfizer Pharm.*, 208 DPR 263, 282 (2021). En un sentido más amplio, es la institución mediante la cual dos o más partes nombran a una o varias personas como "jueces" por medio de una declaración de sus voluntades, para que decida o decidan sobre las controversias que entre ellos existe y, de esta manera, obligándose a cumplir lo que estos decidan *"como si se tratara de una decisión judicial"*.[25] Los elementos esenciales son la expresión de voluntad de las partes, el carácter vinculante de la determinación, la potestad del árbitro para dirimir el contrato mediante su decisión y, por último, el carácter

---

[22] Véase Arts. 1709-1720 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 4821-4842. (Código Civil derogado).

[23] Esta es la ley vigente a los hechos, fue derogada por la Ley 147 del 9 de agosto de 2024, conocida como "Ley de Arbitraje en Puerto Rico".

[24] Secretariado de la Conferencia Judicial del Tribunal Supremo de Puerto Rico. 1997. *Métodos Alternos para la Solución de Conflictos: Informes y Reglamentación.* Puerto Rico: Tribunal Supremo.

[25] Marchand Álvarez, Antonio. El Arbitraje: Estudio Histórico y Jurídico. Sevilla, Publicaciones Univ., Sevilla, 1981, p. 19.

*sui generis* de esta.[26] Sin embargo, cuando sea convenido el arbitraje, pero no sea nombrado arbitro o éste y su sucesor se encuentren imposibilitados de actuar, el Tribunal será quién le nombre. Art. 6, Ley de Arbitraje, supra, 32 LPRA sec. 3206

En Puerto Rico existe una vigorosa política a favor del arbitraje como método alterno para la solución de conflictos, estableciendo que toda duda sobre si procede o no el arbitraje debe resolverse a favor de este, conforme haya sido pactado. *Aponte Valentín et al. v. Pfizer Pharm.,* supra, pág. 282. No obstante, el Tribunal Supremo de Estados Unidos ha resuelto que los tribunales solo pueden invalidar un acuerdo de arbitraje por las mismas razones que aplican a todo contrato bajo la ley estatal. Id pág. 283, citando a *Doctor's Associates, Inc. v. Casarotto*, 517 US 681, 687 (1996).

**III.**

Por encontrarse relacionados entre sí, este tribunal determinó atender *los cuatro (4) señalamientos de error* en conjunto.

La parte apelante, en esencia, expone que erró el TPI-SJ al desestimar la demanda incoada por Shub, al amparo de la Regla 10.2(5) de Procedimiento Civil, supra, determinando que su demanda no justifica la concesión de un remedio al depender de los resultados de otro pleito sobre la misma controversia. Veamos.

Es harto conocido que nuestro estado de derecho permite la desestimación de un pleito cuando se expone una reclamación que no justifica la concesión de un remedio. Esto basado en lo establecido en la Regla 10.2 (5) de las Reglas de Procedimiento Civil, *supra.* Ciertamente, no se justifica la concesión de un remedio, principalmente, en los casos en los que no se tiene derecho a uno o en el que, aun teniéndolo, no fue ejercido oportunamente.

---

[26] Marchand Álvarez, Antonio. El Arbitraje: Estudio Histórico y Jurídico. Sevilla, Publicaciones Univ., Sevilla, 1981, p. 19.

Por otro lado, entendemos menester señalar que el Tribunal Supremo de Puerto Rico ha expuesto en reiteradas ocasiones que nuestro ordenamiento procesal civil no permite que dos tribunales atiendan de manera simultánea dos casos que versen sobre la misma controversia. Esto pudiera provocar resultados contradictorios, afectando nuestra economía procesal y la adjudicación de una determinación justa. A su vez, no se justifica la concesión de un remedio cuando este se solicita mediante el mecanismo equivocado. Así, nuestro ordenamiento procesal civil permite varias formas de atender reclamaciones sobre controversias de hecho o de derechos relacionadas entre dos partes, todas bajos las reglas relativas a la consolidación, entiéndase, las reconvenciones y las de acumulación de acciones o partes.

Cuando la reclamación del demandado surge de los mismos hechos alegados por el demandante [actos, omisión o eventos de la reclamación del demandante], se tratará de una reconvención compulsoria. Así, le corresponde formular su reclamación de reconvención compulsoria en la alegación responsiva y no mediante otra demanda en multiplicidad de litigios. Si la parte demandada olvida presentar su reconvención, tendrá que solicitar -a discreción del tribunal que discute el caso inicial- permiso para presentarla mediante enmienda, según dispone la Regla 11.5, supra.

En el caso ante nos, Menda presentó demanda el 6 de febrero de 2023 impugnando la Cláusula Núm. 34 del Acuerdo de Separación y el Laudo del 30 de noviembre de 2022. Eventualmente, el 1 de noviembre de 2023, Shub presentó demanda en la que expone reclamaciones que se relacionan con la misma Cláusula Núm. 34 sobre Arbitraje y el Laudo, enmendando la Cláusula de Arbitraje. Ambos casos fueron presentados ante el TPI-SJ, en *salas diferentes.* Por un lado, Menda impugna la validez del Laudo que elimina a Taubenfeld como árbitro sustituto y, por el otro, Shub

solicita la descualificación de Taubenfeld y la designación de un árbitro sustituto. Estamos, sin duda alguna, ante reclamaciones que debieron atenderse mediante una reconvención compulsoria y que, ciertamente, al no haberse formulado en el foro adecuado y en el momento oportuno, pretenden subsanarse con la presentación de un pleito simultáneo. La reclamación de Shub en el caso ante nos, no justifica la concesión de un remedio, pues, nuestros Tribunales están impedidos de atender casos simultáneos que puedan propender a resultados contradictorios.

Por tanto, a este Tribunal le resulta forzoso concluir que los errores señalados por el apelante no se cometieron. Siendo así, es nuestro deber *confirmar* la Sentencia que se recurre.

**IV**

Por los fundamentos que anteceden*, confirmamos* la sentencia apelada*.*

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

La Jueza Grana Martínez concurre sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones